# ATTACHMENT B

AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services (the "Agreement"), effective January 10th, 2006 is by and between INNOVATIVE MARKETING, INC, a corporation, with its principal office at 1876 Hutson Street, Belize City, Belize (hereinafter "Client"), and BYTEHOSTING INTERNET SERVICES, LLC, an OHIO limited liability corporation, with its principal office at 3864 McMann Road, Cincinnati, OH 45245, United States of America (hereinafter the "Company").

WHEREAS, Client finds that the Company is willing to perform certain work hereinafter described in accordance with the provisions of this Agreement; and

WHEREAS, Client finds that the Company is qualified to perform the work, all relevant factors considered, and that such performance will be in furtherance of Client's business.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and intending to be legally bound, the parties hereto agree as follows:

1. SERVICES.

    1.1 Services to Client. The Company shall provide the following ("Services") to Client:
    IT Infrastructure Management, Linux/FreeBSD Systems Administration

    1.2 Term Length. This agreement shall be in effect for one (1) year from date of signing. The agreement shall renew each year on the date of signing unless notification of intent to terminate the agreement is received by the company in writing from the client with at least 90 days notice prior to the renewal date.

2.0 PAYMENT AND INVOICING TERMS.

    2.1 Payment for Services. The Company will be paid as follows:
    Company will bill client on the 25th of each month for services performed. Amounts are to be paid IN-FULL within seven (7) business days from receipt of invoice. From time to time the Company may provide additional services which may be billed separately. Invoices for these items are due IN-FULL within seven (7) business days of receipt of invoice.

    2.2 Reimbursable Costs. Client shall reimburse the Company all costs incurred in connection with the Services rendered. Reimbursable costs include, but are not limited to, travel costs, subcontractors, materials, computer costs, telephone, copies, delivery, etc. that are attributable to a project or Service (the "Reimbursable Costs"). Travel costs are defined as air travel, lodging, meals and incidentals, ground transportation, tools, and all costs associated with travel. All extraordinary travel expenses must receive Client's approval. The Company shall provide to Client substantiation of Reimbursable Costs incurred.

2.3 Invoicing.

(a) Invoices will submitted monthly by the Company for payment by Client. Payment is due upon receipt and is past due seven (7) business days from receipt of invoice. If Client has any valid reason for disputing any portion of an invoice, Client will so notify the Company within seven (7) calendar days of receipt of invoice by Client, and if no such notification is given, the invoice will be deemed valid. The portion of the Company's invoice that is not in dispute shall be paid in accordance with the procedures set forth herein.

(b) A finance charge of 1.5% per month on the unpaid amount of an invoice, or the maximum amount allowed by law, will be charged on past due accounts. Payments by Client will thereafter be applied first to accrued interest and then to the principal unpaid balance. Any attorney fees, court costs, or other costs incurred in collection of delinquent accounts shall be paid by Client. If payment of invoices is not current, the Company may suspend performing further work.

2.40 Taxes. All amounts payable pursuant to this Agreement are exclusive of taxes. Accordingly, there will be added to any such amount payable by Client the monetary sum equal to any and all current and future applicable taxes, however designated, incurred as a result of or otherwise in connection with this Agreement or the Services, including without limitation state and local privilege, excise, sales, services, withholding, and use taxes and any taxes or other amounts in lieu thereof paid or payable by Client (other than taxes based on the Company's net income). If Client does not pay such taxes, the Company may make such payments and Client will reimburse the Company for those payments. Client will hold the Company harmless for any payments made by Client pursuant to this Section 2.4.

3.0 CHANGES.

Client may, with the approval of the Company, issue written directions within the general scope of any Services to be ordered. Such changes (the "Change Order") may be for additional work or the Company may be directed to change the direction of the work covered by the Task Order, but no change will be allowed unless agreed to by the Company in writing.

4. STANDARD OF CARE.

The Company warrants that services shall be performed by personnel possessing competency consistent with applicable industry standards. No other representation, express or implied, and no warranty or guarantee are included or intended in this Agreement, or in any report, opinion, deliverable, work product, document or otherwise. Furthermore, no guarantee is made as to the efficacy or value of any services performed or software developed. THIS SECTION SETS FORTH THE ONLY WARRANTIES PROVIDED BY THE COMPANY CONCERNING THE SERVICES AND RELATED WORK PRODUCT. THIS WARRANTY IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, NON-INFRINGEMENT, TITLE OR OTHERWISE.

5. LIABILITY.

   5.1 Limitation. The Company's liability, including but not limited to Client's claims of contributions and indemnification related to third party claims arising out of services rendered by the Company, and for any losses, injury or damages to persons or properties or work performed arising out of or in connection with this Agreement and for any other claim, shall be limited to the lesser of (i) one thousand dollars ($1000) or (ii) payment received by the Company from Client for the particular service provided giving rise to the claim. Notwithstanding anything to the contrary in this Agreement, the Company shall not be liable for any special, indirect, consequential, lost profits, or punitive damages. Client agrees to limit the Company's liability to Client and any other third party for any damage on account of any error, omission or negligence to a sum not to exceed the lesser of (i) one thousand dollars ($1000) or (ii) the payment received by the Company for the particular service provided giving rise to the claim. The limitation of liability set forth herein is for any and all matters for which the Company may otherwise have liability arising out of or in connection with this Agreement, whether the claim arises in contract, tort, statute, or otherwise.

   5.2 Remedy. Client's exclusive remedy for any claim arising out of or relating to this Agreement will be for the Company, upon receipt of written notice, either (i) to use commercially reasonable efforts to cure, at its expense, the matter that gave rise to the claim for which the Company is at fault, or (ii) return to Client the fees paid by Client to the Company for the particular service provided that gives rise to the claim, subject to the limitation contained in Section 5.1. Client agrees that it will not allege that this remedy fails its essential purpose.

   5.3 Survival. Articles 2, 4, 5, and 6 survive the expiration or termination of this Agreement for any reason.

6.0 MISCELLANEOUS.

   6.1 Insecurity and Adequate Assurances. If reasonable grounds for insecurity arise with respect to Client's ability to pay for the Services in a timely fashion, the Company may demand in writing adequate assurances of Client's ability to meet its payment obligations under this Agreement. Unless Client provides the assurances in a reasonable time and manner acceptable to the Company, in addition to any other rights and remedies available, Company may partially or totally suspend its performance while awaiting assurances, without any liability.

   6.2 Severability. Should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining provisions, which remaining provisions shall remain in full force and effect as if this Agreement had been executed with the invalid portion thereof eliminated, and it is hereby declared the intention of the parties that they would have executed the remaining portion of this Agreement without including any such part, parts, or portions which may, for any reason, be hereafter declared invalid. Any provision shall nevertheless remain in full force and effect in all other circumstances.

   6.3 Modification and Waiver. Waiver of breach of this Agreement by either part shall not be considered a waiver of any other subsequent breach.

   6.4 Independent Contractor. The Company is an independent contractor of Client.

6.5 <u>Notices</u>. Client shall give the Company written notice within one hundred eighty (180) days of obtaining knowledge of the occurrence of any claim or cause of action which Client believes that it has, or may seek to assert or allege, against the Company, whether such claim is based in law or equity, arising under or related to this Agreement or to the transactions contemplated hereby, or any act or omission to act by the Company with respect hereto. If Client fails to give such notice to the Company with regard to any such claim or cause of action and shall not have brought legal action for such claim or cause of action within said time period, Client shall be deemed to have waived, and shall be forever barred from bringing or asserting such claim or cause of action in any suit, action or proceeding in any court or before any governmental agency or authority or any arbitrator. All notices or other communications hereunder shall be in writing, sent by courier or the fastest possible means, provided that recipient receives a manually signed copy and the transmission method is scheduled to deliver within 48 hours, and shall be deemed given when delivered to the address specified below or such other address as may be specified in a written notice in accordance with this Section.

If to the Company:
ByteHosting Internet Services, LLC
Attention: James Reno
3864 McMann Road STE A
Cincinnati, OH 45245
United States of America

If to Client:
Innovative Marketing, Inc
1876 Hutson Street
Belize City
Belize

Any party may, by notice given in accordance with this Section to the other parties, designate another address or person or entity for receipt of notices hereunder.

6.6 <u>Assignment</u>. The Agreement is not assignable or transferable by Client. This Agreement is not assignable or transferable by the Company without the written consent of Client, which consent shall not be unreasonably withheld or delayed.

6.7 <u>Disputes</u>. The Company and Client recognize that disputes arising under this Agreement are best resolved at the working level by the parties directly involved. Both parties are encouraged to be imaginative in designing mechanism and procedures to resolve disputes at this level. Such efforts shall include the referral of any remaining issues in dispute to higher authority within each participating party's organization for resolution. Failing resolution of conflicts at the organizational level, the Company and Client agree that any remaining conflicts arising out of or relating to this Contract shall be submitted to nonbinding mediation unless the Company and Client mutually agree otherwise. If the dispute is not resolved through non-binding mediation, then the parties may take other appropriate action subject to the other terms of this Agreement.

6.8 <u>Section Headings</u>. Title and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

6.9 Representations; Counterparts. Each person executing this Agreement on behalf of a party hereto represents and warrants that such person is duly and validly authorized to do so on behalf of such party, with full right and authority to execute this Agreement and to bind such party with respect to all of its obligations hereunder. This Agreement may be executed (by original or telecopied signature) in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

6.10 Residuals. Nothing in this Agreement or elsewhere will prohibit or limit the Company's ownership and use of ideas, concepts, know-how, methods, models, data, techniques, skill knowledge and experience that were used, developed or gained in connection with this Agreement. The Company and Client shall each have the right to use all data collected or generated under this Agreement.

6.11 Nonsolicitation of Employees. During and for one (1) year after the term of this Agreement, Client will not solicit the employment of, or employ the Company's personnel, without the Company's prior written consent.

6.12 Cooperation. Client will cooperate with the Company in taking actions and executing documents, as appropriate, to achieve the objectives of this Agreement. Client agrees that the Company's performance is dependent on Client's timely and effective cooperation with the Company. Accordingly, Client acknowledges that any delay by Client may result in the Company being released from an obligation or scheduled deadline or in Client having to pay extra fees for the Company's agreement to meet a specific obligation or deadline despite the delay.

6.13 Governing Law and Construction. This Agreement will be governed by and construed in accordance with the laws of the State of Ohio, United states of America, without regard to the principles of conflicts of law. The language of this Agreement shall be deemed to be the result of negotiation among the parties and their respective counsel and shall not be construed strictly for or against any party.

6.14 Arbitration. Any controversy, dispute or claim arising out of or related to this Agreement or breach of this Agreement shall be settled solely by confidential binding arbitration by a single arbitrator in accordance with the commercial arbitration rules of JAMS in effect at the time the arbitration commences. The award of the arbitrator shall be final and binding. No party shall be entitled to, and the arbitrator is not authorized to, award legal fees, expert witness fees, or related costs of a party. The arbitration shall be held in Cincinnati, Ohio, United States of America.

6.15 Entire Agreement; Survival. This Agreement, including any Exhibits, states the entire Agreement between the parties and supersedes all previous contracts, proposals, oral or written, and all other communications between the parties respecting the subject matter hereof, and supersedes any and all prior understandings, representations, warranties, agreements or contracts (whether oral or written) between Client and the Company respecting the subject matter hereof. This Agreement may only be amended by an agreement in writing executed by the parties hereto.

6.15 Force Majeure. The Company shall not be responsible for delays or failures (including

any delay by the Company to make progress in the prosecution of any Services) if such delay arises out of causes beyond its control. Such causes may include, but are not restricted to, acts of God or of the public enemy, fires, floods, epidemics, riots, quarantine restrictions, strikes, freight embargoes, earthquakes, electrical outages, computer or communications failures, and severe weather, and acts or omissions of subcontractors or third parties.

6.16 Use By Third Parties. Work performed by the Company pursuant to this Agreement is only for the purpose intended and may be misleading if used in another context. Client agrees not to use any documents produced under this Agreement for anything other than the intended purpose without the Company's written permission. This Agreement shall, therefore, not create any rights or benefits to parties other than to Client and the Company.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Date: January 10th, 2006

[Client]

By: D_____

Title: PRESIDENT

[Company]

By: _____

Title: _____