# DECLARATION OF SHERYL DREXLER

# PURSUANT TO 28 U.S.C. § 1746

I, Sheryl Drexler, hereby make the following declaration. Unless otherwise indicated, I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify as follows:

1. I am an investigator with the Federal Trade Commission's ("FTC" or "Commission") Division of Marketing Practices in Washington, DC.

2. Pursuant to the *ex parte* Temporary Restraining and Asset Freeze and the subsequent Preliminary Injunction issued by this court on December 3, 2008 and December 15, 2008 ("Orders"), respectively, the FTC served more than 20 major financial institutions throughout the United States with the Orders and requested that they search for assets held by the Defendants. Other than two credit card accounts held by Kristy Ross and a safe deposit box held by Sam Jain, the Commission was not able to locate any financial accounts located in the United States belonging to Jain or Ross. The Commission did locate $174,105.44 in domestic assets, the majority of which belong to James Reno.

3. The Commission located several overseas bank accounts belonging to the Defendants throughout the course of its investigation and via the Canadian litigation. Based on this information, the FTC sent letters to 16 financial institutions located throughout the world including in Latvia, Bahrain, Switzerland, Singapore, United Arab Emirates, Canada and Sweden in order to inform them of the lawsuit and request that they honor the asset freeze imposed by this Court. None of the overseas financial institutions contacted by the FTC have agreed to comply with the Orders.

4. The Commission retained a process server to serve Sam Jain with the pleadings in this case. On

December 4, 2008, Jain's attorney, Jack Palladino, was served with the pleadings, including the *ex parte* Temporary Restraining Order, at 355 1st Street Unit 2801 in San Francisco, CA. See D.E. 14.

5. On December 5, 2008, the FTC sent Kristy Ross an e-mail message informing her of the existence of the lawsuit and attaching the *ex parte* Temporary Restraining Order. In addition, on that same day, the FTC left a messages on Ross' cell phone voicemail informing her about the lawsuit and sent Federal Express packages containing all the pleadings in the lawsuit to her postal box in Idaho, and to her attention at her parents' and sister's homes in Idaho.

6. I reviewed the credit card statements for Kristy Ross that were submitted to the FTC by JP Morgan Chase and BMW Bank of North America. The statements included charges for 2008 and showed expenditures including: several stays at the Four Seasons Resort in Nevis and other luxury hotels throughout the world, including the British Colonial Hilton in the Bahamas; a series of meals totaling over $500, including at least two meals totaling more than $800; and purchases at several luxury stores including Dolce & Gabbana (more than $13,000 in 2008), Harrods of London (totaling more than $30,000 in 2008), and Louis Vuitton (more than $23,000 in 2008). These credit card charges were initiated at locations all over the world including London, Toronto, Kiev, Brussels, Zurich, Nevis, Frankfurt, and Montreal in 2008 alone. Ross ceased the use of both of these credit cards in or around September 2008.

I declare under penalty of perjury that the foregoing statement is true and correct.

Executed on ___January 29___, 2009.

_____
Sheryl Drexler