

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

December 23, 2008

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**

Mr. Ethan Arenson, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room 288
Washington, DC  20580

Re:   *Federal Trade Commission v. Innovative Marketing, Inc. et al.*
      Civil Case No. RDB 08 CV 3233, U.S. District Court for the District of Maryland

Dear Mr. Arenson:

    As we have discussed, I am writing to set forth our position regarding Mr. Sam Jain's efforts to comply with the Temporary Restraining Order entered December 2, 2008 (the "TRO") and the Preliminary Injunction dated December 12 (the "PI") against Mr. Jain and others. We recognize the Commission's legitimate interest in assuring that allegedly deceptive conduct does not continue. As I mentioned when we spoke yesterday morning, however, because Mr. Jain is the target of a criminal investigation in the Northern District of Illinois covering the same conduct as the Commission's suit, and because of the very breadth of the TRO and PI, there are formidable obstacles to providing you with those assurances. Very simply, Mr. Jain cannot detail any steps he may have taken in relation to IMI without waiving his Fifth Amendment privilege and making admissions that could be used against him in the criminal case; similarly, the scope of the asset freeze makes it impossible for him to expend any resources even to comply with the TRO and PI or to continue to defend the threatened criminal case.

    Nevertheless, we do not think that there is any basis for, or any purpose now to be served by, proceeding with a contempt order against Mr. Jain. We write here to detail why we believe that Mr. Jain is not in violation of those portions of the TRO and PI that may lawfully be enforced without violating his rights under the Fifth and Sixth Amendments. We welcome further discussion to narrow any potential differences between us and to explore ways to resolve them.



Mr. Ethan Arenson
December 23, 2008
Page 2

By way of background, on Friday December 12, the Court ordered "that Defendants Kristy Ross, James Reno, ByteHosting Internet Services LLC, Marc D'Souza and Innovative Marketing, Inc." submit evidence to the Court by December 17 demonstrating why they should not be held in contempt for failing to comply with the TRO. On its face, the Order to Show Cause was not directed to Mr. Jain. In addition, as I previously advised you with supporting declarations, Mr. Jain had not been served with process as of December 17, precluding the Court from exercising personal jurisdiction over him and thus from enforcing the TRO or PI against him.

Nevertheless, in good faith, we reached an accommodation with the FTC whereby the FTC consented to postponing a ruling on the Order to Show Cause in exchange for Mr. Jain's agreement to waive service and provide the FTC evidence of his compliance with the TRO and PI, subject to any modifications or assertions of constitutional or other rights with respect to their enforcement. *See* Response to Order to Show Cause (Dkt. #22). In accordance with that agreement, we hereby respond concerning Mr. Jain's compliance.[1]

**No evidence suggests Mr. Jain has failed to comply with the TRO's substantive provisions proscribing prohibited business activities, enforcing the asset freeze, or preserving records.**

In its motion for an order to show cause, the FTC argued that Mr. Jain and the other defendants "have also ignored this Court's order to cease marketing their products through domain names registered with false information, and appear to have taken no steps to halt their deceptive advertising," and that "these defendants . . . have ignored this Court's edict that they immediately halt their deceptive marketing practices and use of websites registered with false contact information." FTC Motion at 4-5. In support, the FTC provided the Declaration of Sheryl Drexler. *Id.* Ms. Drexler's declaration, however, at most establishes that three websites with false registration information were in operation as of December 11, 2008, and provides in only conclusory fashion that she had "determined" those websites "belong to the defendants in this action." *See* Drexler Decl.

---

[1] For ease of reference, and because the FTC has represented that the terms of the TRO and the PI are substantially identical, this letter generally will refer only to the TRO. However, unless context or language specifically indicates otherwise, each such reference shall include the corresponding provisions of the PI.

**PATTON BOGGS LLP**
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 3

      We believe that Mr. Jain is in compliance with the requirements of each of the substantive TRO prohibitions. *See* TRO § I (Prohibited Business Activities); § II (Concealing Identities); § III (Suspension of Web Sites); § IV (Asset Freeze); and § XI (Preservation of Records). With respect to suspension of web sites, Sheryl Drexler should now find those sites shut down and inoperable. Further, we can assure you that, subsequent to December 4, Mr. Jain has not, and will not, destroy *any* documents; that generalized assurance, however, is expressly made as to any and all documents of any nature, without reference to any of the categories described in the TRO or PI, to avoid the risk of waiving Mr. Jain's valid Fifth Amendment privilege against self-incrimination. *See, e.g., Mitchell v. United States*, 526 U.S. 314, 321 (1999) (privilege is waived when witness testifies voluntarily about a subject and then later invokes the privilege when questioned about the details of that subject). Similarly, Mr. Jain has not spent or dissipated *any* assets, which general assurance also is made expressly without reference to assets specified in the TRO or PI to avoid waiver of the privilege. *Id.*

      As I have explained, the nature of the privilege against self-incrimination, and waiver thereof, unfortunately compels us to rely on the absence of evidence of non-compliance, rather than affirmative statements or evidence of compliance, to assure the FTC that Mr. Jain is not in contempt of the TRO or PI. Indeed, while Mr. Jain certainly would like to provide detailed information regarding his compliance with each specific TRO and PI provision, to do so would risk waiving his privilege, which he hereby asserts on advice of counsel. *Id.* Accordingly, Mr. Jain is not in contempt of TRO Sections I, II, III, IV or XI.

**The TRO violates Mr. Jain's Fifth Amendment privilege against self-incrimination.**

      As you know, Mr. Jain is a subject of an ongoing parallel criminal investigation, conducted by the U.S. Attorney's Office for the Northern District of Illinois, into the very same conduct underlying the FTC's complaint in this action. In fact, as reflected in the attached declaration of Mr. Jain's criminal counsel in that matter, the government has explicitly informed Mr. Jain that he will be indicted on federal wire fraud and computer fraud charges "sooner rather than later" as a result of that investigation. *See* Declaration of Ted W. Cassman, dated December 18, 2008 (attached as Ex. 1). Accordingly, it is beyond dispute that Mr. Jain is subject to very "real dangers" of self-incrimination against which the Fifth Amendment privilege protects. *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972). Moreover, the FTC's allegations in this action indisputably implicate possible violations of federal criminal statutes, for example wire fraud, that place Mr. Jain in grave jeopardy of criminal prosecution. *See, e.g., Ullman v. United States*, 350 U.S. 422, 439

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 4

(1956) (privilege protects against the "danger to a witness forced to give testimony leading to the infliction of penalties affixed" to "criminal acts"). Under the circumstances, Mr. Jain is endowed with the right to invoke his Fifth Amendment privilege not to comply with those provisions of the TRO compelling him to provide incriminating testimony or to provide any documents as to which the act of production effectively would compel incriminating testimony about their existence, possession, authenticity, or responsiveness.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The privilege, which has its origins in centuries of "painful opposition to a course of ecclesiastical inquisitions and Star Chamber proceedings," *Michigan v. Tucker*, 417 U.S. 433, 440 (1974), establishes the basic constitutional principle that the government is required to produce the evidence to convict an individual "by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." *Mitchell*, 526 U.S. at 326 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-82 (1961)). The privilege is "broadly construed" and applies "in any proceeding . . . civil or criminal, administrative or judicial, investigatory or adjudicatory." *Maness v. Meyers*, 419 U.S. 449, 461, 464 (1975). Its protections are not limited only to "answers that would in themselves support a conviction," *Hoffman v. United States*, 341 U.S. 479, 486 (1951), but rather extend to any information that would "furnish a link in the chain of evidence that could lead to prosecution," *Maness*, 419 U.S. at 461. The government violates this landmark constitutional proscription when: (1) it compels an individual to make a statement; (2) the statement is "testimonial" in that it explicitly or implicitly asserts a fact or discloses information, *Doe v. United States*, 487 U.S. 201, 210-11 (1988); and, (3) the statement might "tend to incriminate," *Emspak v. United States*, 349 U.S. 190, 197 (1955).

**The TRO compels Mr. Jain to make explicitly testimonial statements that might tend to incriminate him.**

Several provisions of the Court's TRO compel Mr. Jain to make explicitly testimonial statements. *See* TRO § V (compelling Mr. Jain to affirmatively complete FTC's sixteen-page financial statement forms with extensive and detailed personal information "verified under oath and accurate as of the date of entry of this Order"); § VII.A (compelling Mr. Jain to provide the FTC "with a full accounting, verified under oath and accurate as of the date of this Order, of all funds, documents, and assets outside of the United States" titled in, held for, or controlled by Mr. Jain); § XII (compelling Mr. Jain to "prepare and deliver to the Commission a completed statement, verified under oath and accurate as of the date of entry of this Order, identifying by name" all affiliates "that have worked with the IMI Defendants in connection with the distribution of the IMI Defendants' computer security products."); § XIII

**PATTON BOGGS**LLP
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 5

(compelling Mr. Jain to "prepare and deliver to the Commission a completed statement, verified under oath and accurate as of the date of entry of this Order, identifying" the IMI Defendants' computer software products and websites); § XIV.A (compelling Mr. Jain "to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money"); § XIV.B (compelling Mr. Jain to provide the FTC with detailed written information about any business entity Mr. Jain creates, operates, or controls, including information about the entity's "officers, directors, principals, managers and employees"); § XV (compelling Mr. Jain to "provide the Commission with a sworn statement" identifying the names and contact information of certain affiliates, sub-affiliates, subsidiaries, hosting companies and other identified groups to whom Section XV orders Mr. Jain to provide a copy of the TRO). Each of those categories requires Mr. Jain to explicitly assert facts and disclose information to the government, in most cases *under oath*, and thus unquestionably compels Mr. Jain to make "testimonial communications." *Doe*, 487 U.S. at 210-11; *Fisher v. United States*, 425 U.S. 391, 409 & 410 n.11 (1976). *See also FTC v. Singer*, 534 F. Supp. 24, 26 (N.D. Cal. 1981) (holding that an injunction obtained by the FTC ordering defendant to create an accounting of assets violated the Fifth Amendment by requiring self-incriminating testimonial communication).

Considering Mr. Jain's imminent indictment in the Northern District of Illinois for the very activity underlying the FTC's claims, as well as the obvious criminal jeopardy arising from the FTC's allegations themselves, Mr. Jain's compliance with those TRO provisions would tend to incriminate him. The Supreme Court has clarified that a statement is sufficiently incriminating if the witness reasonably believes that the government could use it to prosecute him, or if the statement could be a "link in the chain" of the prosecution's evidence, *Hoffman*, 341 U.S. at 486, or "lead to other evidence that might be so used," *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). Any such statement is protected unless it is "'*perfectly clear*, from a careful consideration of all circumstances in the case, that . . . the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman*, 341 U.S. at 488 (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1881) (emphasis in original)). One need only examine "the implications of the question, in the setting in which it is asked," in order to determine the incriminatory impact. *Id.* at 486-87.

Reviewing the TRO provisions discussed above, their incriminatory implications are unmistakable. Each of them would help to confirm Mr. Jain's alleged involvement in the affairs of IMI and the allegedly criminal conduct. Indeed, the orders seemed designed not simply to assist the government in proving the allegations of wrongdoing it already has made, but to force Mr. Jain to detail any other similar conduct in which he might be engaged. As but one example, the compulsion in Section XII to provide the FTC a statement identifying all

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 6

affiliates "that have worked with the IMI Defendants in connection with the distribution of the IMI Defendants' computer security products" would incriminate Mr. Jain both in linking him to such persons as "affiliates" and in establishing his connection to distribution of the very "computer security products" that both the FTC and the Chicago U.S. Attorney's Office have identified as fraudulent. The testimony compelled by Section XV raises the same concerns. Similarly, Section XIII's compulsion to identify all IMI computer products and websites would incriminate Mr. Jain by establishing his knowledge of, and connection to, those products and websites that are expressly alleged to be fraudulent and illegal. The TRO sections compelling Mr. Jain to provide testimonial communications regarding his financial transactions -- for example, Sections V, VII.A, and XIV.A -- conceivably could provide a link in a chain leading to evidence tying Mr. Jain's finances to those entities the government considers involved in the alleged fraud, and thus it is not "'*perfectly clear,* from a careful consideration of all circumstances in the case, that . . . the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman,* 341 U.S. at 488; *see also Singer,* 534 F. Supp. at 26 (FTC injunction compelling asset accounting violated Fifth Amendment privilege).

Mr. Jain, therefore, also has a valid Fifth Amendment privilege with respect to TRO Sections V, VII.A, XII, XIII, XIV.A, XIV.B, and XV, and cannot be held in contempt of court for his alleged failure to comply with those provisions.

> **The TRO compels Mr. Jain to produce documents as to which the act of production might tend to incriminate him.**

In addition to the explicitly testimonial statements discussed above, the TRO compels Mr. Jain to produce documents as to which the mere act of production effectively would compel incriminating testimonial communication about their existence, possession, authenticity, or responsiveness or about Mr. Jain's control over the documents or knowledge of their contents. When an individual complies with such an order to provide documents, the "act of production" implicitly concedes the existence of the materials demanded, their possession or control by that individual, and that the individual believes the materials to be those described in the order. *Fisher,* 425 U.S. at 410; *see Doe,* 465 U.S. 605.

The act of production is always testimonial in some degree; the interests that the Fifth Amendment are designed to protect are particularly at risk, however, where the order compelling production demands sweeping categories of documents requiring the witness to make "discretionary judgments about the documents themselves . . . thereby identifying information relevant to the authenticity of the documents. . . . [T]he broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial." *In re Grand Jury Proceedings, Subpoenas for Documents,* 41 F.3d



Mr. Ethan Arenson
December 23, 2008
Page 7

377, 380 (8th Cir. 1994). *See also United States v. Hubbell*, 530 U.S. 27, 41-42 (2000); *In re Grand Jury Subpoena, Dated April 18, 2003*, 383 F.3d 905, 909-13 (9th Cir. 2004) (applying *Hubbell*, holding that where existence, location, and authenticity of documents was not a foregone conclusion the district court committed reversible error by denying motion to quash subpoena); *Matter of Grand Jury Empanelled March 19, 1980*, 680 F.2d 327, 335 (3d Cir. 1982), *aff'd sub nom. Doe*, 465 U.S. 605; *United States v. Fox*, 721 F.2d 32, 36 (2d Cir. 1983).

The sweeping requests in Section IX of the TRO are precisely the sort of requests that would elicit "testimonial" statements from Mr. Jain as a result of two structural features. First, any request that requires "all" items or "all" documents related to certain subject matters implies that the government has no knowledge of every relevant document; otherwise, the FTC would have made a more specific request. *See* TRO § IX (compelling production of "all" customer information, all contracts, all correspondence referring or relating to IMI Defendants' software products, all advertisements for IMI Defendants' software, all accounting information, and all computer software products marketed by IMI Defendants since 2002). Similarly, the generalized demands for such broad categories as "accounting information," "customer information," "correspondence" and "contracts" betrays a desire to discover new information. By responding to requests of this nature, Mr. Jain would concede the existence of those documents and his possession of them, thereby adding to the sum total of the government's information.

Second, TRO Section IX is framed in such a way that a surrender of documents verifies facts mentioned in the demand. Compliance with a request that seeks all documents related to "customer" information, "contracts," correspondence "that refer or relate to the IMI Defendants' software," any advertisement "that purports to scan or otherwise analyze the computer upon which it is displayed," and software products "marketed by the IMI Defendants" would concede that Mr. Jain had customers, entered contracts, corresponded in relation to IMI software, participated in advertisements that purport to scan or analyze computers, and marketed computer software products since 2002, even though the content of the documents themselves might not so indicate. The requests involve events, transactions and items whose occurrence or existence could be confirmed implicitly by Mr. Jain's act of production, even if the documents' content provided no such proof. A response to TRO Section IX, therefore, permits the government thereafter to assert -- rather than merely to assume -- certain facts, thereby adding to the government's knowledge of Mr. Jain's activities.



Mr. Ethan Arenson
December 23, 2008
Page 8

To be sure, courts have carved out a narrow exception to the act of production doctrine when the existence and location of the documents are a "foregone conclusion," because the implicit statements do not add to "the sum total of the Government's information[.]" *Fisher*, 425 U.S. at 411. The government meets this standard only if it "can demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents." *In re Grand Jury Subpoena Duces Tecum dated November 13, 1984*, 616 F. Supp. 1159, 1161 (E.D.N.Y. 1985). The FTC can, of course, make no such demonstration here; and the plain and purposely overbroad terms of TRO Section IX belie any reliance on this exception.

In addition, for the reasons discussed above with respect to explicitly testimonial communications, Mr. Jain's act of production in response to TRO Section IX would tend to incriminate him. Mr. Jain's production of responsive documents could establish his connection to IMI customers, IMI contracts, IMI computer software products, and IMI advertisements – specifically including the advertisements the government alleges are fraudulent. Under the circumstances, the FTC simply cannot establish, as required, that it is "'*perfectly clear* . . . the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman*, 341 U.S. at 488. Because Mr. Jain is protected by his valid Fifth Amendment privilege from producing the documents compelled by TRO Section IX, he cannot be held in contempt of court for allegedly failing to comply with that provision.

> **The TRO's asset freeze literally precludes Mr. Jain from complying with the Order's remaining provisions; the inherent conflict renders complete compliance impossible.**

The FTC's asset freeze, initiated by TRO Section IV and continued by the corresponding section of the preliminary injunction, by its plain terms literally freezes every dollar and cent of Mr. Jain's existing assets, and does not provide for a single exclusion or exemption, including expenditures for food, water, shelter or attorneys' fees.[2] Moreover, it precludes Mr. Jain from spending any money to comply with the remaining provisions of the

---

[2] In addition to rendering complete compliance impossible, the lack of such exclusions also creates Fifth Amendment due process infirmities. *See United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998) ("A restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications." (citing *United States v. Thier*, 801 F.2d 1463, 1477 (5th Cir. 1986) (Rubin, J., concurring) (suggesting that such a result "shocks the judicial conscience"), *amended by* 809 F.2d 249 (5th Cir. 1987))).


**PATTON BOGGS LLP**
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 9

TRO, such as copying or mailing documents or the various "sworn statements" to the FTC. The inherent conflict between the TRO's asset freeze and its remaining provisions -- specifically those requirements in Sections V, VII, IX, XII, XIII, XIV, XV, and XIX, which would necessitate expenditure of funds to comply -- renders Mr. Jain's compliance fundamentally impossible. Mr. Jain should not be held in contempt for allegedly violating provisions with which he otherwise was enjoined from complying, forcing him to choose between contradictory provisions and punishing Mr. Jain for complying with TRO Section IV's asset freeze.

**The TRO's asset freeze violates Mr. Jain's Sixth Amendment right to counsel.**

As you know, Mr. Jain currently is a defendant in an ongoing criminal proceeding in the U.S. District Court for the Northern District of California, San Jose Division (the "San Jose Proceeding"), and has been informed of his imminent indictment in an ongoing criminal investigation conducted by the U.S. Attorney's Office for the Northern District of Illinois (the "Illinois Investigation"). *See* Ex. 1 ¶¶ 4-6. Mr. Jain, therefore, has an existing Sixth Amendment right to counsel of his choice. *See Miller v. Smith*, 115 F.3d 1136, 1149 n.5 (4th Cir. 1997) ("[E]very circuit court and the U.S. Supreme Court has recognized that a criminal defendant has a qualified right to counsel of choice"); *Jones*, 160 F.3d at 646. Mr. Jain's right to counsel guarantees him use of his personal resources to pay the counsel of his choice for their services. *See United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973). Though courts generally may order an asset freeze in suits seeking equitable relief brought by the FTC to ensure availability of sufficient final relief, *FTC v. Ameridebt, Inc.*, 373 F. Supp. 2d 558, 562 (D. Md. 2005), the asset freeze entered in this case is overly broad and impermissibly infringes on Mr. Jain's Sixth Amendment right to counsel. This overbreadth not only impedes Mr. Jain's ability to defend himself in this litigation, but also in the pending criminal San Jose Proceeding and Illinois Investigation.

Despite those ongoing criminal proceedings, the asset freeze entered against Mr. Jain prohibits him from using any existing assets, regardless of their origin, to fund his criminal defense. Unlike a forfeiture action, in which title to forfeitable assets vests in the government at the time of the alleged illegal conduct, *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989), the FTC here has no prior right or title to Mr. Jain's frozen assets that would prevent their use in defending the existing and threatened criminal actions. *See, e.g., United States v. Payment Processing Ctr., LLC*, 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006) (addressing civil injunction under 18 U.S.C. § 1345). Nor has the FTC attempted to make any showing that the frozen assets are traceable or related to the supposed activity giving rise to its complaint or that the amount frozen bears any relation to the relief sought.

**PATTON BOGGS**ᴸᴸᴾ
ATTORNEYS AT LAW

Mr. Ethan Arenson
December 23, 2008
Page 10

*See United States v. Noriega*, 746 F. Supp. 1541, 1545-46 (S.D. Fla. 1990). As the U.S. Court of Appeals for the Fourth Circuit has emphasized, "[t]his nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496-97 (4th Cir. 1999). Instead, the FTC sought and obtained an asset freeze that applies indiscriminately to all of Mr. Jain's assets regardless of their source.

Even though *Caplin & Drysdale* and its companion case, *United States v. Monsanto*, 491 U.S. 600 (1989), establish that criminal defendants do not have the right to use *forfeitable* assets to fund their defense, subsequent cases have clarified that defendants must be afforded the use of all assets that are not forfeitable.[3] *See United States v. Farmer*, 274 F.3d 800, 803-05 (4th Cir. 2001). Outside the forfeiture context, where the government has no existing right or title to frozen assets, the government cannot use a civil injunction to force a criminal defendant into indigence. Without any current claim of right or title to the frozen assets here, the TRO impermissibly forces Mr. Jain into indigence, depriving him of his constitutional right to counsel of choice. While the Court has limited power to freeze assets to provide for ultimate relief, this discretionary, interim equitable relief cannot violate Mr. Jain's Sixth Amendment right to counsel, which "is simply more important than the Government's interest in the untainted portion of Defendant's substitute property." *United States v. Najjar*, 57 F. Supp. 2d 205, 209 (D. Md. 1999).

The overbreadth of the asset freeze under this TRO and PI is stark when contrasted with the considerably narrower freezes granted in similar civil regulatory cases. Courts routinely permit civil defendants, even with no pending criminal litigation, to have access to their frozen assets to pay reasonable attorneys' fees. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372 (9th Cir. 1990); *FTC v. Atlantex Assocs.*, 872 F.2d 966 (11th Cir. 1989); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988); *Payment Processing Ctr.*, 439 F. Supp. 2d 435; *FTC v. Phoenix Avatar, LLC*, 2004 U.S. Dist. LEXIS 14717 (N.D. Ill. July 30, 2004). Indeed, "fundamental fairness requires that defendants . . . have access to restrained property if that is their only means of securing counsel." *Payment Processing Ctr.*, 439 F. Supp. 2d at 440. Mr. Jain's right of access to funds to retain counsel of his choice here is not merely a matter of fundamental fairness, but also explicitly mandated

---

[3] Though courts may require defendants to establish lack of other assets with which to pay counsel, *see, e.g., States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001), such an inquiry is unnecessary here as the Court has frozen all of Mr. Jain's assets.



Mr. Ethan Arenson
December 23, 2008
Page 11

by the Sixth Amendment. The FTC should agree to modify the PI accordingly, and certainly should not attempt to hold Mr. Jain in contempt with respect to Section IV of the TRO or PI.

> **Mr. Jain cannot be held in contempt of the TRO or PI because, lacking effective service of process when entered, the Court had no personal jurisdiction over Mr. Jain to enjoin him and made no alternative findings that could permit Mr. Jain to be bound.**

As set forth in Mr. Jain's joint response to the Order to Show Cause, the FTC had failed to serve Mr. Jain with the summons and complaint in this action until Mr. Jain agreed on December 17 to waive service of process. The Court, therefore, was precluded from exercising personal jurisdiction over him at the time the TRO and PI were entered, and Mr. Jain cannot be held in contempt for failing to comply with injunctions that did not bind him. *See, e.g., Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987). The Supreme Court in *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 110, 112 (1969), held that a district court erred in *entering* an injunction against a defendant who had not been served with process. *See also Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-235 (1916). The Fourth Circuit, citing Rule 65 of the Federal Rules of Civil Procedure, similarly vacated the district court's injunction because a party cannot obtain injunctive relief without obtaining personal jurisdiction through proper service of process. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957-58 (4th Cir. 1999) ("Consequently, a party cannot obtain injunctive relief against another without first obtaining in personam jurisdiction over that person or someone in legal privity with that person."). Accordingly, Mr. Jain cannot be held in contempt for violating injunctions that were unenforceable against him for lack of personal jurisdiction.

For the reasons discussed above, Mr. Jain either is in compliance with, or has valid constitutional or other defense to, each provision of the TRO and PI. We, therefore, urge the Commission to continue to forebear pursuing a contempt order against Mr. Jain and look forward to discussing a resolution to any potentially disputed issues.

Sincerely,

Robert D. Luskin



Mr. Ethan Arenson
December 23, 2008
Page 12


cc:   Colleen Robbins, Esq.
      Carmen Christopher, Esq.
      Benjamin D. Wood, Esq.

## DECLARATION OF TED W. CASSMAN

Ted W. Cassman, pursuant to 28 U.S.C. § 1746, submits the following declaration:

1. I am over eighteen years of age, I am competent to testify, and the following information is based on my personal knowledge.

2. I am a member of the law firm Arguedas, Cassman & Headley LLP ("AC&H"), and I maintain my office at 803 Hearst Avenue, Berkeley, California 94710. I am a member in good standing of the Bar of the State of California.

3. I have reviewed, and am familiar with the claims asserted in, the Federal Trade Commission's Complaint for Injunctive and Other Equitable Relief in the civil action styled *Federal Trade Commission v. Innovative Marketing, Inc.*, Civil No. RDB 08 CV 3233, in the United States District Court for the District of Maryland (the "FTC Suit").

4. AC&H and I represent Mr. Sam Jain in an ongoing criminal proceeding in the United States District Court for the Northern District of California, San Jose Division, in which Mr. Jain is the defendant (the "San Jose Proceeding").

5. AC&H and I also currently represent Mr. Jain in an ongoing investigation, conducted by the United States Attorney's Office for the Northern District of Illinois, of Innovative Marketing, Inc. ("IMI"), Mr. Jain, and others for alleged violations of federal wire fraud and computer fraud statutes (the "Illinois Investigation").

6. In late September, I met with an Assistant United States Attorney and two agents of the Federal Bureau of Investigation in Chicago, Illinois, in connection with the Illinois Investigation. During that meeting, the A.U.S.A. unequivocally stated that Mr. Jain will be indicted for wire fraud and computer fraud charges as a result of the Illinois Investigation "sooner rather than later." Based upon the statements of the A.U.S.A., I am informed and

believe that the government intends to indict Mr. Jain on wire fraud and computer fraud charges arising from the same basic activity underlying the FTC's claims in the FTC Suit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2008.

                                                 Ted W. Cassman