UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **Federal Trade Commission**<br><br>                              **Plaintiff,**<br><br>       **v.**<br><br>**Innovative Marketing, Inc.,** *et al.*<br><br>                              **Defendants,**<br><br>**AND**<br><br>**Maurice D'Souza**<br><br>                              **Relief Defendant.** | **CIVIL NO. RDB 08-CV-3233** |

## PLAINTIFF'S CONSOLIDATED OPPOSITION TO THE MOTIONS FOR A TEMPORARY STAY FILED BY DEFENDANTS SAM JAIN AND KRISTY ROSS

Defendants Sam Jain and Kristy Ross are making a mockery of this proceeding. After evading service of the complaint, ignoring this Court's order to appear at the preliminary injunction hearing, and wilfully disobeying the mandates of both the Temporary Restraining Order and Preliminary Injunction issued by this Court, defendants Jain and Ross now ask this Court for extraordinary relief: an indefinite stay of proceedings. In making this request, defendants neglect to mention that Jain is the subject of a recently-issued bench warrant, which was executed after Jain absconded from an unrelated criminal proceeding currently pending in California.

Even without their history of ignoring every Order this Court has issued, the defendants' request for an indefinite stay of proceedings would be extraordinary. Given the defendants' history with this Court, and Jain's current status as a fugitive, this Court should not hesitate to deny the stay requested by

the defendants.

I.   **LEGAL STANDARD**

A stay is "extraordinary relief" appropriate only in "extraordinary circumstances." Weil v.

Markowitz, 829 F.2d 166, 175 n.17 (D.C. Cir. 1987). See also In re Mid-Atlantic Toyota Antitrust

Litigation, 92 F.R.D. 358, 360 (D. Md. 1981) (declining to grant "extraordinary remedy of a stay.")  As

Jain and Ross concede, the decision whether to grant their request for a stay is committed to this Court's

discretion.  Landis v. North American Co., 299 U.S. 248, 254-5 (1936) (power to stay proceedings is an

offshoot of the court's inherent power to control its docket); United States v. Georgia Pacific Corp., 562

F.2d 294, 296 (4th Cir. 1977) (noting that a motion to stay proceedings is committed to the sound

discretion of the court).

In determining whether a stay is appropriate, the Court must balance five factors:

> (1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced against the prejudice to the plaintiffs if delay;
>
> (2) the burden on defendants;
>
> (3) the convenience to the courts;
>
> (4) the interest of persons not parties to the civil litigation; and
>
> (5) the public interest.

In re Mid-Atlantic Toyota, 92 F.R.D. at 359.  The burden is on the moving party to prove through clear

and convincing evidence that the movant's interests outweigh the potential harm to the opposing party,

the court, and third parties.  Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir.

1983).

The law is clear that the mere existence of parallel civil and criminal proceedings as to a given

defendant does not warrant the issuance of a stay.  See United States v. Kordel, 397 U.S. 1, 11 (1970) ("It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial").  See also SEC v. Dresser, 628 F.2d 1368, 1377 (D.C. Cir. 1980) ("we should not block parallel investigations . . . in the absence of 'special circumstances . . ..'"); Keating v. OTS, 45 F.3d 322, 324 (9th Cir. 1995) ("the Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.")  Indeed, it is "well established that parallel civil and criminal proceedings can be brought and pursued against the same defendant 'simultaneously or successively.'"  IBM v. Brown, 857 F. Supp. 1384, 1387 (C.D. Cal. 1994) (quoting Standard Sanitary Mfg. v. United States, 226 U.S. 20 (1912)).

## II.    ARGUMENT

### A.    Jain and Ross's Request for an Indefinite Stay Should Be Denied

On balance, the five factors articulated in In re Mid-Atlantic Toyota weigh heavily in the Commission's favor.  As a result, this Court should decline to stay this case.

#### 1.    Prejudice To The Commission

The first factor the Court must consider is the prejudice a stay would inflict upon the Commission.  Under the unique facts of this case, such prejudice would be substantial and far reaching.

##### a.    The Indefinite Stay Requested By The Defendants Would Significantly Harm The Commission And Constitute An Abuse Of This Court's Discretion

Although Jain and Ross caption their motion as a request for a "temporary" stay, they are in fact requesting a stay that could last years, or longer.  As discussed in the Commission's Opposition to Defendants Jain and Ross's Motion to Strike (D.E. 53), Sam Jain is currently a fugitive.  After Jain

3

ignored a court order to appear in the unrelated criminal case pending against him in the United States

District Court for the Northern District of California, District Judge Whyte issued a bench warrant for

Jain's arrest on January 26, 2009.  The FTC is informed by the Assistant United States Attorney

prosecuting the case that as of the date of this Opposition, Jain remains on the lam.

 Jain's decision to flee prosecution in California has significant repercussions for this case.

Unless and until he is found, Jain will not stand trial in a criminal case arising from the conduct at issue

here.  See Crosby v. United States, 506 U.S. 255, 261 (1993) (holding that Crim. R. Civ. Pro. 43

prohibits a trial in absentia unless the defendant was present at the beginning of the trial).  As a result, if

this Court were to grant Jain and Ross's request that this case be stayed until the criminal investigation

of Jain is complete, this case would remain stayed indefinitely.

 The harm to the Commission from such a lengthy and potentially endless stay is obvious.  The

Commission's evidence would grow stale, its witnesses' memories would fade, and the prospects of

redressing any of the more than $100 million in consumer injury at issue in this case would grow

exceedingly remote.  See Avalonbay Communities, Inc. v. San Jose Water Conversation Corp., Civ. No.

07-306, 2007 WL 2481291 (E.D. Va. Aug. 27, 2007) (denying stay request where stay would have

prejudiced plaintiff by "risking the loss of documents, the fading of witnesses' memories, and the

deterioration of Defendants' financial resources. . .."); In re Phillips, Beckwith & Hall, 896 F. Supp.

553, 559 (E.D. Va. 1995) ("A party is not entitled to delay resolution of a civil action, even to

accommodate her Fifth Amendment interests, if her adversary's case will deteriorate as a result of the

stay."); In re Mid-Atlantic Toyota, 92 F.R.D. at 359 (denying stay where it would have rendered

aggrieved persons "unable to seek vindication or redress for indefinite periods of time on end.")

Morever, entering the requested indefinite stay would likely constitute an abuse of this Court's discretion.  See Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544-45 (5th Cir. 1983) ("stay orders will be reversed when they are found to be immoderate or of an indefinite duration.") (internal citation omitted).  See also Landis, 299 U.S. at 257 (holding that a stay must be "so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of [prediction] and description.")

> b.     A Stay Would Facilitate Jain and Ross's Continued Defiance Of This Court's Orders

From the outset of this litigation, Jain and Ross have demonstrated contempt for the lawful orders of this Court.  After ignoring the Temporary Restraining Order ("TRO") entered by this Court, Jain and Ross proceeded to defy the mandates of this Court's Preliminary Injunction ("PI").  A detailed account of this conduct is included in the Commission's pending contempt motion, as well as the motion for an order to show cause filed by the Commission on December 12, 2008.  See D.E. 16, 49.

Given Jain and Ross's history of ignoring the mandates of the TRO and PI during the pendency of this case, there is absolutely no reason to believe they would alter their conduct if this case were to be stayed.  Indeed, with the FTC's ability to monitor their compliance with this Court's Orders virtually eliminated as a result of the stay, Jain and Ross would have every incentive to continue and expand their defiance.  Such conduct, including the dissipation of assets, destruction of documents, and resumption of activity injurious to consumers, would irreparably harm the FTC's efforts to prosecute this case and obtain redress for consumers injured by the defendants' conduct.

2.     <u>Burden On The Defendants</u>

Defendants devote the majority of their brief to the argument that denying their stay request would cause them significant hardship.  Defendants argue that if this case proceeds, they will be forced to invoke the Fifth Amendment to avoid incriminating themselves, which will then be used against them in this civil case.  This – the defendants argue – is unfair, and warrants the imposition of a stay.

Remarkably, defendants support their argument by citing to <u>Avalonbay Communities</u>, 2007 WL 2481291, a case in which the court considered and rejected the exact same argument raised here, and declined a stay request.  In <u>Avalonbay Communities</u> the court agreed that the defendants in the case were "constitutionally burdened by having either to prepare an adequate civil defense that includes testimony [from the primary defendant], but possibly opens up evidence for future prosecution, or to prepare a civil defense without [the primary defendant's] testimony that will likely be inadequate." <u>Avalonbay Communities</u>, 2007 WL 2481291 at 3.  Nonetheless, the court denied the requested stay, holding that the burden on the defendants "does not outweigh the prejudice created to Plaintiff by having to sit aside for an undeterminable amount of time." <u>Id</u>  As the court noted:  "Defendants face a constitutional dilemma, but the Fifth Amendment privilege does not come without cost in the civil arena." <u>Id</u>. at 4.

The rejection of the defendants' argument in <u>Avalonbay Communities</u> is in accord with the decisions of many other courts that have considered the same issue.  This body of law is well

summarized in <u>Brown</u>:

> The contention that being forced to choose between the compulsion to testify
> in a civil suit in order to avoid an adverse result on the merits undermines the
> right to remain silent in a criminal matter, while having surface appeal, will
> not stand analysis.  While the choice between testifying or invoking the Fifth
> Amendment may be difficult . . . it does not create the basis for a stay.

<u>Brown</u>, 857 F. Supp. at 1389 (internal citations omitted).  <u>Accord</u> <u>Keating</u>, 45 F.3d at 325-26 (upholding

decision to deny stay request based on argument that proceeding with the civil case would force

defendant to invoke the Fifth Amendment to his disadvantage); <u>United States v. Taylor</u>, 975 F.2d 402,

404 (7th Cir. 1992) (A party who chooses to assert the privilege against self-incrimination in a civil case

must live with the consequences, and "if this be seen as a price on the assertion of the privilege, so be

it."); <u>In re Phillips Beckwith & Hall</u>, 896 F. Supp. at 559 (rejecting stay request and noting that "the

Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the

civil arena."); <u>SEC v. Incendy</u>, 936 F.Supp. 952, 956 (S.D. Fla. 1996) (rejecting stay request and

holding that "[f]orcing an individual to risk non-criminal disadvantage by remaining silent for fear of

self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional

infringement"); <u>SEC v. Grossman</u>, 121 F.R.D. 207, 210 (S.D.N.Y. 1987) (rejecting stay request based

on argument that invocation of the Fifth Amendment would unfairly result in a negative inference in

pending civil proceedings: "Others have faced comparable circumstances; the choice may be unpleasant,

but it is not illegal, and must be faced.")

The defendants' argument that a stay is warranted because their Fifth Amendment rights would

be infringed if this case were to proceed has been soundly rejected by courts across the country.  As a

result, the burden on the defendants in continuing this case is minimal, and does not justify the

extraordinary remedy of a stay.[1]

### 3.    Convenience To The Courts

The indefinite stay requested by Jain and Ross would cause this matter to languish on this

Court's docket for an unknown, but undoubtedly lengthy, period. As other courts have recognized, such

delay weighs against the issuance of a stay. See, e.g., Arden Way Assoc. v. Boesky, 660 F. Supp. 1494,

1497 (S.D.N.Y. 1987) ("issuing stays solely because a litigant is defending simultaneous multiple suits

would threaten to become a constant source of delay and an interference with judicial administration.")

(internal citation omitted). See also United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk,

Inc., 811 F. Supp. 802, 808 (E.D.N.Y. 1992) ("convenience of the courts is best served when motions to

stay proceedings are discouraged.")

### 4.    Interests of Third Parties and the Public Interest

Both the interests of third parties and the public interest weigh strongly in favor of denying the

stay requested by the defendants. If the requested indefinite stay were granted, the more than one

million consumer victims of the defendants' scareware fraud would face an indefinite, but undoubtedly

lengthy, delay in receiving any compensation for the harm they have suffered at the hands of the

defendants. Moreover, delaying the resolution of this case will significantly increase the risk that the

---

[1] It warrants mentioning that the defendants have yet to assert a valid Fifth Amendment
objection in this case. In its January 29, 2009, Motion for an Order Holding Defendants Jain and
Ross in Contempt (D.E. 49), the FTC expressly addressed shortcomings in defendants' Fifth
Amendment invocations. Specifically, the FTC explained (1) that defendants' blanket assertions
of the Fifth Amendment privilege, lacking any specificity whatsoever, are insufficient and (2)
that the Fifth Amendment does not eliminate defendants' obligation to produce corporate
records, or to bring the corporate defendant, Innovative Marketing, Inc., into compliance with
this Court's orders. Unless and until defendants present meritorious Fifth Amendment
objections, any harm they would face as a result of this proceeding is entirely speculative.

defendants' assets will be concealed, dissipated, or consumed by teams of high-priced criminal defense lawyers in a future criminal action.   Thus, any stay of this case will cause significant harm to the innocent victims of the defendants' fraud, a factor that weighs heavily against a stay.

The public at large will also be harmed by a stay of this case.   The public has a significant interest in effective and timely enforcement of the FTC Act, which would be injured by the indefinite stay requested here.   P.F. Collier & Son Corp. v. FTC, 427 F.2d 261, 267 (6th Cir.1970) (recognizing the public's interest in enforcement of Section 5 of the FTC Act).   Moreover, as discussed above, there is a significant risk that the defendants would ignore the mandates of the PI and resume their operations if a stay were granted, which would gravely injure the public interest.

5.   Conclusion

The defendants have failed to meet their heavy burden.   Each of the In re Mid-Atlantic Toyota stay factors weigh in favor of proceeding with this case.   Accordingly, the FTC requests that this Court enter the attached proposed Order denying defendants' motion to stay this case.

**B.   The Court Should Deny Jain and Ross's Footnote Applications for the Release of Attorneys' Fees from Frozen Funds**

In a brief footnote to each of their briefs, Jain and Ross ask this Court to modify the asset freeze currently in place and allow them to pay their criminal defense counsel with the proceeds of their unlawful enterprise.[2]   Despite the defendants' assertions to the contrary, they have no right to spend ill-gotten gains on attorneys' fees, much less retain counsel of their choice with unlawfully–acquired

---

[2]It is unclear whether Ross's motion requests frozen funds for her civil defense counsel as well.   The footnote request merely says that she "joins in Mr. Jain's request to modify the asset freeze to permit her to pay for defense counsel."

assets.  Furthermore, the defendants' request to release frozen funds cannot be justified in this case,

where the defendants have provided no evidence to demonstrate a need for these funds, and the funds

available for consumer redress are dwarfed by the consumer injury caused by the defendants.

Accordingly, the FTC requests that this Court deny the defendants' cursory applications to modify the

asset freeze.

1.    The Defendants are Not Entitled to Use Frozen Funds to Pay for Attorneys of Their
      Choice

The court has the discretion to deny or limit compensation to defense counsel from frozen assets.

SEC v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000); CFTC v. American Metals Exchange

Corp., 991 F.2d 71, 79 (3d Cir. 1993); SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993); CFTC v. Noble

Metals Int'l, Inc., 67 F.3d 766, 775 (9th Cir. 1995).  Despite Sam Jain and Kristy Ross's suggestion that

they are entitled to the use of these funds for attorneys' fees under the Sixth Amendment as a matter of

right, the law does not require an award of fees in this case.  See SEC v. Cherif, 933 F.2d 403, 416-17

(7th Cir. 1991) (refusal to allow additional frozen assets to pay attorneys' fees did not infringe on Sixth

Amendment right to obtain counsel of choice.)  In fact, contrary to the defendants' arguments, they have

no right to retain counsel of their choice with illegally–acquired assets.[3]  In re Forfeiture Hearing as to

Caplin & Drysdale Chartered, 837 F.2d 637, 644-45 (4th Cir. 1988) (the right to counsel of choice

belongs only to those with legitimate assets) aff'd Caplin & Drysdale Chartered v. United States, 491

---

[3]Although it appears the defendants are seeking attorneys's fees solely for the criminal
attorneys, it is worth noting that there is no constitutional right to counsel in a civil lawsuit.
Moreover, since a criminal defendant has no right to spend another person's money for
attorneys' fees, it would be "anomalous to hold that a civil litigant has any superior right to
counsel than one who stands accused of a crime."  Cherif, 933 F.2d at 416-17.

U.S. 617, 631 (1989); <u>Quinn</u>, 997 F.2d at 289 ("Just as a bank robber cannot use the loot to wage the best defense money can buy . . . so a swindler . . . cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.")  <u>See also</u> <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988) (a defendant may not insist on representation by an attorney he cannot afford); <u>United States v. Monsanto</u>, 491 U.S. 600, 612-14 (1989) (a criminal defendant has no Sixth Amendment right to spend another person's money for attorneys' fees).  Thus, a defendant has no Sixth amendment right to spend someone else's money, even if those funds are the only way that the defendants will be able to retain the attorney of their choice.  <u>Caplin</u>, 491 U.S. at 626.

       2.    <u>The Defendants Have Failed To Meet Their Burden Of Establishing A Need For Frozen Funds</u>

     The defendants have the burden of establishing that they can only secure the services of an attorney if frozen assets are released, and they must demonstrate that they cannot pay fees from their new or exempt assets. <u>FSLIC v. Dixon</u>, 835 F.2d 554, 565 (5th Cir. 1987).  Courts have denied, or at least limited, requests to use frozen funds for attorneys' fees where the defendants failed to make that showing, and, in fact, had access to other funds.  <u>See</u>, <u>e.g.</u>, <u>Amer. Metals</u>, 991 F.2d at 79-80 (affirming refusal to grant a release of frozen assets for attorneys' fees where, among other things, defendant had access to non-frozen funds); <u>Infinity Group Co.</u>, 212 F.3d at 197 (limiting release of funds for legal expenses because defendants were attempting to raise funds from other sources); <u>see</u> <u>also</u> <u>SEC v. Coates</u>, No. 94 Civ. 5361, 1994 WESTLAW 455558 at *2 (S.D.N.Y. 1994)  (denying request for release of frozen personal assets for living expenses where defendant was receiving salary from Receiver).  Courts are especially reluctant to release funds when, as here, the defendant is slow to produce financial records.  <u>Amer. Metals</u>, 991 F.2d at 77-80.

Not only have Jain and Ross failed to submit evidence that they do not have access to non-frozen funds, they have refused to complete the Court-ordered financial disclosures which would assist the FTC and the Court in evaluating the defendants' request for frozen funds.  As a result, the FTC and the Court are left to guess at how much money the defendants have access to, and how much money will be left for consumer redress at the end of this litigation.

While the defendants will undoubtedly argue that they have refused to complete the financial disclosures because to do so would incriminate them, this decision has consequences in this civil proceeding.  When a defendant refuses to produce a financial accounting on the basis of the Fifth Amendment, the Court may and should infer that the defendants' testimony would have been adverse to them.  <u>Cherif</u>, 933 F.2d at 417 (not an abuse of discretion for district court to draw an adverse inference from the defendant's refusal to submit an accounting which would reveal which frozen funds, if any, were not proceeds of trading activity); <u>Dixon</u>, 835 F.2d at 566 (defendants whose assets were frozen refused to demonstrate their net worth by invoking their Fifth Amendment privilege, and court upheld district court's inference that any testimony regarding this issue would have been adverse to them); <u>SEC v. Bankers</u>, 881 F.Supp. 673, 683 (D.D.C. 1995) (the court may consider the invocation of the privilege by the defendants as an additional factor indicating they know where investor fund are located and have ability to repatriate).

Defendants have failed to meet the threshold showing required for a release of frozen funds: an inability to pay counsel with non-frozen assets.  As a result, their request for relief from the asset freeze should be denied.

3.    The Court Should Deny the Defendants' Request Because The Frozen Assets Are Already Grossly Insufficient to Provide Redress

Even if the defendants had demonstrated a need for access to frozen funds, this Court would still have discretion to deny their request based on the fact that the amount needed to compensate injured consumers is far less than the amount of assets frozen by this Court's order. Noble Metals, 67 F.3d at 775 (holding that the fact frozen asset fell short of the amount needed to redress consumer injury was "reason enough" to deny an application to pay attorneys' fees from frozen funds). In CFTC v. Morse, 762 F.2d 60, 63 (8th Cir. 1985), where only $42,000 was available to satisfy claims of $1.2 million, the court stated, "[i]t would be inequitable to further deplete these funds to pay [attorneys' fees] in the [defendant's] attempt to avoid paying his customers." Indeed, an asset freeze is designed to preserve the status quo by preventing the dissipation and diversion of assets. Infinity Group, 212 F.3d at 197; Am. Metals, 991 F.2d at 79.  Through their deceptive marketing, the defendants have caused consumer injury in excess of $100 million. So far, the FTC has located only $174,000 of the defendants' assets. As a result, the defendants should not be permitted to use fraudulently-obtained assets to fund their defense. These frozen funds are not the defendants' money to spend, and, given the meager quantity, should be preserved for consumer redress.

4.    Conclusion

The defendants have no right to use the proceeds of their fraud to fund the best defense money can buy.  Moreover, the defendants' refusal to account for their assets, or offer any proof that they lack access to non-frozen funds, is fatal to their applications to modify the asset freeze imposed by this

Court.  As a result, this Court should deny the defendants' request to modify the asset freeze.


Dated: February 12, 2009

Respectfully submitted:

DAVID SHONKA
Acting General Counsel

Ethan Arenson DC # 473296 (earenson@ftc.gov)
Colleen B. Robbins, NY# 2882710 (crobbins@ftc.gov)
Carmen J. Christopher, DC # 499917 (cchristopher@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., NW, Room 288
Washington, D.C. 20580
(202) 326-2204 (Arenson); (202) 326-2548 (Robbins);
(202) 326-3643 (Christopher)
(202) 326-3395 FACSIMILE

14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Federal Trade Commission** | |
| **Plaintiff,** | **CIVIL NO. RDB 08-CV-3233** |
| **v.** | |
| **Innovative Marketing, Inc.,** *et al.* | |
| **Defendants,** | |
| **AND** | |
| **Maurice D'Souza** | |
| **Relief Defendant.** | |

**ORDER DENYING DEFENDANT SAM JAIN AND KRISTY ROSS'S**
**MOTIONS FOR TEMPORARY STAY**

Upon consideration of defendant Sam Jain and Kristy Ross's Motion for Temporary Stay, and the consolidated opposition filed thereby by the Federal Trade Commission ("Commission"), it is this _____ of _____, 2009,

**ORDERED** that defendant Sam Jain and Kristy Ross's Motions for Temporary Stay are DENIED.

_____
Richard D. Bennett
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2009, I caused a true and correct copy of the foregoing, together will all attachments, to be served via the Court's electronic filing system upon:

Tom Kirsch
Winston & Strawn
35 W. Wacker Drive
Chicago, Illinois
60601-9703
*Counsel for Kristy Ross*

Robert Luskin
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
*Counsel for Sam Jain*

Garret Rasmussen
Orrick
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
*Counsel for Marc D'Souza*

Chris Jenkins
Minnillow & Jenkins
22 West 9th Street
Cincinnati, OH 45202
*Counsel for James Reno and ByteHosting Internet Services LLC*

Ethan Arenson