UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **Federal Trade Commission**<br><br>    **Plaintiff,**<br><br>v.<br><br>**Innovative Marketing, Inc.,** *et al.*<br><br>    **Defendants,**<br><br>AND<br><br>**Maurice D'Souza**<br><br>    **Relief Defendant.** | CIVIL NO. RDB 08-CV-3233 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SAM JAIN'S
MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

Plaintiff Federal Trade Commission ("FTC" or "Commission"), for its opposition to Defendant Sam Jain's Motion to Modify Preliminary Injunction, states as follows:

**I.   Introduction**

In his motion to modify the preliminary injunction, Sam Jain seeks to: 1) strike six separate provisions of the preliminary injunction ("PI") because they may require him to assert his Fifth Amendment privilege in this civil case; and 2) modify the asset freeze in the PI to allow him to spend unlimited amounts of his ill-gotten gains on the attorneys of his choosing, despite the fact that he is now a fugitive and is not participating in the criminal case pending against him. Both of these requests are unwarranted and should be denied.

## II. Argument

### A. Jain's Request For Reconsideration Of the PI Is Untimely

After making the tactical decision not to appear at the December 15, 2008 preliminary injunction hearing, Jain now asks this Court to reconsider the PI it issued nearly three months ago. Jain's motion for reconsideration is far too late. Pursuant to Maryland Local Rule 105.10, Jain's motion was due ten days after entry of the PI. See D. Md. Loc. R. 105.10. See also Fidelity and Guaranty Life Ins. Co. v. Harrod, Civ. CCB-5-2732, 2007 WL 2847966 (D. Md. Sept. 27, 2007) at *5 (citing Maryland Local Rule 105.10). Jain failed to meet this deadline. As a result, his motion seeking reconsideration of the provisions of the PI should not be considered.

### B. There Is No Basis For Jain's Request to Strike the Disclosure Provisions of the PI

Even if this Court were to entertain Jain's untimely motion for reconsideration, there would be no basis to grant Jain's request to "delete" various provisions of the PI. Defendant's Motion to Modify Preliminary Injunction ("Motion to Modify PI") at 8. In an argument that even his co-defendant Kristy Ross has declined to join, Jain urges this Court to strike six separate provisions of the PI because those sections may require him to assert his Fifth Amendment privilege in this civil case. Jain cites no authority that would require this Court to take such action. Instead, Jain simply pronounces that he should not be "forced to continually assert his Fifth Amendment privilege in a manner that sacrifices any chance of defending against the FTC's claims." Motion to Modify PI at 8.

In making this argument, Jain ignores the fundamental legal principle that asserting the Fifth Amendment in a civil case comes at a cost. See Baxter v. Palmigiano, 425 U.S. 308, 318-20 (1976) (holding that nothing in the Constitution prohibits imposing an adverse inference against a party that

2

refuses to testify in a civil case). As the FTC pointed out in its Opposition to the Defendants' Motion for a Temporary Stay, courts routinely reject the argument that it is either unfair or improper for a defendant to face disadvantage in a civil case as a result of his invocation of the Fifth Amendment:[1]

> The contention that being forced to choose between the compulsion to testify in a civil suit in order to avoid an adverse result on the merits undermines the right to remain silent in a criminal matter, while having surface appeal, will not stand analysis.

IBM v. Brown, 857 F. Supp. 1384, 1389 (C.D. Cal. 1994) (internal citations omitted). Accord Keating v. OTS, 45 F.3d 322, 325-26 (9th Cir. 1995) (upholding decision to deny stay request based on argument that proceeding with the civil case would force defendant to invoke the Fifth Amendment to his disadvantage); United States v. Taylor, 975 F.2d 402, 404 (7th Cir. 1992) (A party who chooses to assert the privilege against self-incrimination in a civil case must live with the consequences, and "if this be seen as a price on the assertion of the privilege, so be it."); In re Phillips Beckwith & Hall, 896 F. Supp. 553, 559 (E.D. Va. 1995) (rejecting stay request and noting that "the Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the civil arena."); SEC v. Incendy, 936 F.Supp. 952, 956 (S.D. Fla. 1996) (rejecting stay request and holding that "[f]orcing an individual to risk non-criminal disadvantage by remaining silent for fear of self incrimination in a

---

[1] Jain attempts to create ambiguity on this point by citing out-of-context quotes from SEC v. Dunlap, 253 F.3d 768 (4th Cir. 2001). The holding in Dunlap, however, offers no support for Jain's argument that any provision of the PI that requires him to invoke the Fifth Amendment must be stricken. Rather, Dunlap stands for the straightforward proposition that once a meritorious Fifth Amendment objection is made, the court may not attempt to overcome such an objection by holding the defendant in contempt and ordering him imprisoned as a result of his invocation of the Fifth Amendment. Dunlap, 253 F.3d at 775 (modifying the district court's contempt order to the extent it required the defendant to waive his Fifth Amendment objection or be imprisoned.)

parallel criminal proceeding does not rise to the level of an unconstitutional infringement"); SEC v. Grossman, 121 F.R.D. 207, 210 (S.D.N.Y. 1987) (rejecting stay request based on argument that invocation of the Fifth Amendment would unfairly result in a negative inference in pending civil proceedings: "Others have faced comparable circumstances; the choice may be unpleasant, but it is not illegal, and must be faced.")

Jain's effort to "delete" the bulk of the PI issued by this Court is a transparent attempt to use the Fifth Amendment as both a sword and a shield. Jain invokes broad Fifth Amendment objections that will make it impossible for the FTC to obtain any information from him, and at the same time, seeks to avoid any negative inference resulting from his broad invocation of the Fifth Amendment in this civil case. Jain simply cannot have it both ways. As a result, his motion to modify the PI is unwarranted, and should be denied.[2]

### C.  The Court Should Deny Jain's Request to Modify the Asset Freeze Because He Has Failed To Demonstrate That It is Necessary or Appropriate

Jain asks this court to modify the asset freeze within this Court's PI arguing that, in a variety of ways, it violates his Sixth Amendment right to counsel. At the PI hearing Jain declined to attend, this Court specifically found that the FTC is likely to succeed on the merits of this case. Moreover, as this is an equitable proceeding, restitution is appropriate and necessary to remedy the massive consumer injury caused by the defendants. Therefore, an asset freeze is not only appropriate in this case, but it is

---

[2]In the interests of judicial economy, the FTC has not repeated its arguments as to why Jain's blanket invocation of the Fifth Amendment is improper. See FTC's Contempt Motion (D.E. 49) at 8-11. If this Court were inclined to modify the PI in response to Jain's arguments, a move the FTC strongly opposes, it should at least require Jain to properly assert his Fifth Amendment objections with particularity and preserve those portions of the PI for which Jain has asserted no valid Fifth Amendment objection.

absolutely necessary to preserve what is left of the defendants' ill-gotten gains for consumer redress.

Jain's arguments that the funds frozen for consumer redress should be released to him fail. First, the asset freeze does not violate Jain's Sixth Amendment right to counsel of his choice; especially given the fact that Jain stopped defending his unrelated criminal case when he absconded from the case and a bench warrant was issued for his arrest. Second, the FTC is not required to trace the frozen assets to the proceeds of Jain's fraud, nor is the FTC's jurisdiction under Section 5 of the FTC Act limited to providing redress exclusively to domestic consumers. Finally, although it may be appropriate in some cases to permit a defendant to receive funds for living expenses and attorneys' fees, Jain has not met his burden in this case of demonstrating that he has a need for those funds.

### 1. Jain is Not Entitled to Use Frozen Funds to Pay for an Attorney of His Choice

This court has the authority to freeze the defendants' assets in this equitable proceeding when it finds that the FTC is likely to succeed on the merits and restitution is an appropriate remedy. In fact, the district court has a duty to ensure that assets are available for restitution for aggrieved consumers. FTC v. World Travel Vacation Brokers, 861 F.2d 1020 (7th Cir. 1988). From there, the court has the discretion to deny or limit compensation to defense counsel from frozen assets. CFTC v. Noble Metals Int'l, Inc., 67 F.3d 766, 775 (9th Cir. 1995); SEC v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000); CFTC v. American Metals Exchange Corp., 991 F.2d 71, 79 (3d Cir. 1993).

Jain's argument that he has an absolute right to use an unlimited amount of frozen funds for his "criminal defense" is ironic, given that Jain is not presenting a defense in the unrelated criminal case pending against him in California. Instead, Jain has elected to flee prosecution and is now on the run from the United States Marshals' Service. Clearly, Jain should not be allowed to deplete the still

unknown amount of frozen funds for a case in which he has affirmatively decided to abscond.

In any event, Jain's suggestion that he is entitled to the use of frozen funds for attorneys' fees as a matter of right under the Sixth Amendment is mistaken. See SEC v. Cherif, 933 F.2d 403, 416-17 (7th Cir. 1991) (refusal to allow additional frozen assets to pay attorneys' fees did not infringe on Sixth Amendment right to obtain counsel of choice.) In fact, Jain has no Constitutional right to retain counsel of his choice with illegally–acquired assets.[3] Caplin & Drysdale Chartered v. United States, 837 F.2d 637 (4th Cir. 1988) (the right to counsel of choice belongs only to those with legitimate assets); Caplin & Drysdale Chartered v. United States, 491 U.S. 617, 631 (1989) (affirming the decision of the Fourth Circuit); Wheat v. United States, 486 U.S. 153 (1988) (a defendant may not insist on representation by an attorney he cannot afford); United States v. Monsanto, 491 U.S. 600 (1989) (a criminal defendant has no Sixth Amendment right to spend another person's money for attorneys' fees). This is true even if the use of those funds are the only way the defendant will be able to retain the attorney of his choice. Caplin, 491 U.S. at 626.[4]

---

[3] Although it appears the defendants are seeking attorneys' fees solely for the criminal attorneys, it is worth noting that there is no constitutional right to counsel in a civil lawsuit. Moreover, since a criminal defendant has no right to spend another person's money for attorneys' fees, it would be "anomalous to hold that a civil litigant has any superior right to counsel than one who stands accused of a crime." Cherif, 933 F.2d at 416-17.

[4] Jain cites to several cases for the proposition that he is entitled to use frozen assets to pay for attorneys' fees. These cases, however, do not support his unequivocal arguments. United States v. Najjar, 57 F. Supp. 2d 205, 210 (D. Md. 1999) (government never established that the property in question was forfeitable under the forfeiture statute and so the court limited the restraints on that property); United States v. Farmer, 274 F.3d 800, 804 (4th Cir. 2001) (a defendant must 'show a bonafide need to utilize [seized] assets . . . to conduct his defense' in order to be entitled to a hearing) (quoting United States v. Kirschenbaum, 156 F.3d 784, 792 (7th Cir. 1998).

2. <u>The FTC Is Not Required to Trace Frozen Funds and is Empowered To Provide Redress To Foreign Consumers</u>

Contrary to Jain's arguments, the FTC is not required to trace the proceeds of Jain's fraud to the amount frozen, especially when the amount frozen falls far short of what is needed to redress consumers. Moreover, Jain is simply incorrect in asserting that Section 5 of the FTC Act does permit the FTC to provide redress to foreign consumers.

    a. <u>The FTC Is Not Required to Trace the Frozen Funds to the Proceeds of the Fraud for the Asset Freeze to Remain in Place</u>

It is undeniable that Jain has profited handsomely from the deceptive sale of IMI's "scareware" products, as alleged in the complaint. The FTC has produced volumes of evidence demonstrating that IMI deceptively distributed software to consumers throughout the U.S. and abroad, and the defendants' affidavits submitted in the Canadian litigation, including a profit and loss statement from 2004-2006, corroborate this evidence. Moreover, the FTC has demonstrated at the TRO stage and again in its Contempt Motion that Sam Jain is the CEO of IMI and is an integral part of IMI's scareware operation. To suggest that Jain has not received the proceeds of this fraud is absurd, and belied by the fact that Jain was the driving force behind the IMI lawsuit filed in Canada against Marc D'Souza to recover IMI's ill-gotten proceeds.

However, even if the FTC could not trace the frozen assets directly to the complaint allegations, the Fourth Circuit has stated that "the freezing of funds . . . may be proper without respect to whether those monies are traceable to the proceeds or profits and income from the proceeds." <u>Kemp v. Peterson</u>, 940 F.2d 110 (4th Cir. 1991) (upholding district court's preliminary injunction freezing assets to preserve the status quo). Other circuits have similarly held that, in equitable proceedings such as this

7

one, district courts need not trace. SEC v. First Pacific Bancorp., 142 F.3d 1186 (9th Cir. 1998) ("the district court was not required to trace every dollar . . . fraudulently retained"); See also SEC v. Hughes Capital Corp., 917 F. Supp. 1080 (D.N.J. 1996) (not necessary to trace every dollar of proceeds misappropriated by the defendants as long as a reasonable approximation of the unjust enrichment is presented).

Moreover, in cases like this one, where the amount needed for consumer redress far exceeds the total frozen, courts have routinely denied requests for relief from an asset freeze despite an inability to fully trace the frozen funds. SEC v. Current Financial Services, 62 F. Supp.2d 66, 68 (D.D.C. 1999); See also, SEC v. Grossman, 887 F. Supp. 649, 661 (S.D.N.Y. 1995) ("it is irrelevant whether the funds affected by the Asset Freeze are traceable to the illegal activity"); Noble Metals, 67 F.3d at 775; CFTC v. Morse, 762 F.2d 60, 63 (8th Cir. 1985) ("[i]t would be inequitable to further deplete these funds to pay [attoneys' fees] in the [defendant's] attempt to avoid paying his customers").

Through their deceptive marketing, the defendants made more than $74 million through the sale of their computer security software products through 2006 alone. So far, the FTC has frozen a mere $174,000 in the United States, and because of the defendants' refusal to complete the court-ordered financial disclosures, the FTC has no way of knowing the full extent of their assets. It would unfairly prejudice the FTC to require it to trace assets at this stage in the litigation, especially since – in disregard of this Court's PI – the defendants are refusing to turn over IMI records to the FTC; the very records that would allow the FTC to accomplish the tracing defendants' demand. Defendants should not benefit from their own contumacious conduct, and therefore the defendants' argument on tracing should be rejected.

### b. The FTC Act Specifically Permits the FTC To Redress Foreign Consumers

As fully briefed in the FTC's Reply to the defendant's Opposition to its Contempt Motion (D.E. 69), any suggestion that the FTC cannot enforce the FTC Act when foreign victims are involved is misplaced. There is a long history of federal case law applying the FTC Act to transnational frauds that harm consumers. See, e.g., FTC v. Branch, 141 F.2d 31, 34 (7th Cir. 1944) (finding jurisdiction under the FTC Act where defendants deceived consumers in Latin America). Moreover, in response to a spate of challenges to the FTC Act based, in part, on the Arabian America Oil case cited by the defendants, Congress amended Section 5(a) of the FTC Act in the U.S. SAFE WEB Act of 2006 to clarify that the terms "unfair or deceptive acts or practices" include such acts or practices involving foreign commerce that either cause or are likely to cause reasonably foreseeable injury within the United States or involve material conduct occurring within the United States. 15 U.S.C. § 45(a). As a result, Section 5(a) of the FTC Act now specifically provides that "all remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph, including restitution to domestic or foreign victims." 15 U.S.C. § 45(a)(4)(B). Because the FTC is specifically empowered to seek redress for foreign victims, the defendants' argument that funds derived from defrauded foreign consumers cannot be frozen for eventual redress must fail.

### 3. Jain Has Not Shown That He Needs Access To Frozen Funds

At the PI hearing, the FTC met its burden of establishing the need for an asset freeze in this case. In order to modify this asset freeze, Jain must now present evidence justifying such relief. Not only has Jain failed to do so, his conduct since the entry of the PI demonstrates exactly why the asset freeze should remain in place in this matter.

It is Jain's burden to establish that he can only secure the services of an attorney if frozen assets are released, and he must demonstrate that he cannot pay fees from his new or exempt assets. FSLIC v. Dixon, 835 F.2d 554, 565 (5th Cir. 1987). Courts have routinely denied or limited requests to use frozen funds for attorneys' fees where the defendants failed to make that showing and, in fact, had access to other funds. See, e.g., CFTC v. Amer. Metals, 991 F.2d 71, 79 (3d Cir. 1993) (affirming refusal to grant a release of frozen assets for attorneys' fees where, among other things, defendant had access to non-frozen funds); SEC v. Infinity Group, 212 F.3d 180, 197 (2000) (limiting release of funds for legal expenses because defendants were attempting to raise funds from other sources); see also SEC v. Coates, 1994 WL 455558 at *4 (S.D.N.Y. Aug. 23, 1994) (denying request for release of frozen personal assets for living expenses where defendant was receiving salary from Receiver). Courts are especially reluctant to release funds when, as here, the defendant is slow to produce financial records. Amer. Metals, 991 F.2d at 79-80. Even the cases Jain cites make it clear that it is the defendant's burden to demonstrate the need for frozen funds.[5]

Here, Jain has failed to carry his heavy burden. Jain has not submitted any evidence of any kind that he lacks access to non-frozen funds. Indeed, it appears clear Jain has such access. Jain's lawyers have been extraordinarily aggressive in this litigation, filing motion after motion to delay this proceeding and undoubtedly ringing up a huge legal bill. Presumably Jain's lawyers have been compensated for these efforts, and Jain does not suggest otherwise. Moreover, Jain has yet to petition this court for any living expenses, despite the fact that the asset freeze has been in place for more than

---

[5]United States v. Payment Processing Ctr., LLC, 439 F. Supp.2d 435, 441 (E.D. Pa. 2006) (court required the defendants to submit financial disclosure forms to demonstrate their need in order to justify any release of frozen funds).

three months. Jain offers no explanation as to how he has been able to fund his exploits as a fugitive from justice during these several months. Jain also offer no evidence as to whether he is currently holding a job, and if so, what compensation he is receiving. Any such funds would be wholly exempt from the asset freeze, and should be used to pay Jain's legal expenses. See PI at Section IV(F) (freezing existing assets and those future assets derived from conduct prohibited by the PI).

Jain has also failed to produce the Court-ordered financial forms which would assist the FTC in evaluating his request for frozen funds. As the Seventh Circuit stated in World Travel, "because neither the individual nor the corporate defendant has complied with the order to disclose relevant financial information, it is extremely difficult to discern if less drastic remedies would have been appropriate." FTC v. World Travel Vacation Brokers, 861 F.2d 1020, 1031 (7th Cir. 1988). As a result, it is impossible for the Court or the FTC to determine how much money Jain has or how much money will be left for consumers at the end of this litigation.[6] Jain's failure to demonstrate a need for frozen funds for attorneys' fees makes it impossible for the FTC and the Court to judge the reasonableness of this

---

[6]Jain argues that he does not wish to use proceeds of the fraud to fund his defense, but rather funds that are not traceable to the fraud. He "asks for the release of assets not linked to any alleged misconduct." However, he has asserted his Fifth Amendment privilege against self-incrimination and has refused to fill out the Court-ordered financial forms. Jain cannot ask this Court to unfreeze money from the unknown quantity of frozen assets and at the same time assert his Fifth Amendment privilege so as to avoid disclosing to the Court the quantity and location of his assets. United States v. Rylander, 460 U.S. 752, 758 (1983) (the assertion of the Fifth Amendment privilege may be a valid ground to decline to answer questions, but it cannot be a substitute for evidence that would assist in meeting a burden of production); United States v. Butler, 211 F.3d 826, 832 (4th Cir. 2000) (upholding district court's determination that defendant cannot assert an inability to comply with a court order, while at the same time refusing to answer any further questions on the issue through the invocation of the Fifth Amendment privilege).

request, and for that reason alone, the Court should deny his request.

Dated: March 5, 2009

                              Respectfully submitted:

                              DAVID SHONKA
                              Acting General Counsel

                              Ethan Arenson, DC # 473296 (earenson@ftc.gov)
                              Colleen B. Robbins, NY# 2882710 (crobbins@ftc.gov)
                              Federal Trade Commission
                              600 Pennsylvania Ave., NW, Room 288
                              Washington, D.C. 20580
                              (202) 326-2204 (Arenson); (202) 326-2548 (Robbins);
                              (202) 326-3395 FACSIMILE

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Federal Trade Commission<br><br>                     Plaintiff,<br><br>v.<br><br>Innovative Marketing, Inc., *et al.*<br><br>                     Defendants,<br><br>AND<br><br>Maurice D'Souza<br><br>                     Relief Defendant. | CIVIL NO. RDB 08-CV-3233 |

## ORDER DENYING DEFENDANT SAM JAIN'S MOTION TO MODIFY PRELIMINARY INJUNCTION

Upon consideration of defendant Sam Jain's Motion to Modify Preliminary Injunction, and the opposition filed thereby by the Federal Trade Commission, it is this ___ of _____, 2009,

**ORDERED** that defendant Sam Jain's Motion to Modify the Preliminary Injunction is DENIED.

_____
Richard D. Bennett
United States District Judge

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2009, I caused a true and correct copy of the foregoing, together will all attachments, to be served via the Court's electronic filing system upon:

Tom Kirsh
Winston & Strawn
35 W. Wacker Drive
Chicago, Illinois
60601-9703
*Counsel for Kristy Ross*

Robert Luskin
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
*Counsel for Sam Jain*

Garret Rasmussen
Orrick
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
*Counsel for Marc D'Souza*

Chris Jenkins
Minnillow & Jenkins
22 West 9th Street
Cincinnati, OH 45202
*Counsel for James Reno and ByteHosting Internet Services LLC*

_____
Ethan Arenson