## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Federal Trade Commission )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Innovative Marketing, Inc., *et al.* )<br>)<br>Defendants, )<br>)<br>AND )<br>)<br>Maurice D'Souza )<br>)<br>Relief Defendant. ) | Civil No.: RDB 08-CV-3233 |

## REPLY MEMORANDUM IN SUPPORT OF RELIEF DEFENDANT MAURICE D'SOUZA'S MOTION TO DISMISS THE COMPLAINT

Relief Defendant Maurice D'Souza submits this reply memorandum in support of his motion to dismiss the Federal Trade Commission's ("FTC") complaint against him for lack of personal jurisdiction. In its Complaint, the FTC named Maurice D'Souza as a "relief defendant" only, and the FTC asserted personal jurisdiction over him because he "has received funds from business transacted in this District." (Compl. ¶ 14.) The FTC did not alleged that Maurice D'Souza is a resident of the United States, that he received any such funds in the United States, that he directed any conduct toward the United States, that that he participated in any unlawful conduct in the United States, or that he conspired with any of the other defendants to do so. In its Opposition, the FTC cites no evidence that Maurice D'Souza did any of these things.

Instead, the FTC argues, first, that this Court has *general* personal jurisdiction over Maurice D'Souza, asserting that he has "continuous and systematic" contacts with the United

States. As discussed below, the FTC has presented no evidence supporting that conclusory assertion. Maurice D'Souza has one contact with the United States—keeping $50,000 of his personnel money on deposit in a bank in Hawaii, and that contact is insufficient to establish general personal jurisdiction. *Am. Express Int'l, Inc. v. Mendez-Capellan,* 889 F.2d 1175, 1178, 1179-81 (1st Cir. 1989)

Second, the FTC argues that this Court has *specific* personal jurisdiction over Maurice D'Souza because the services he provided to other defendants in Bahrain were important—if not essential—to the conduct of *other* defendants that allegedly affected the United States. But the FTC "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over an individual defendant." *D'Onfrio v. SFX Sports Group, Inc.*, 534 F.Supp. 2d 86, 90 (D.D.C. 2008). Instead, "[e]ach defendant's contacts with the forum must be assessed individually." *In re Royal Ahold*, 351 F.Supp.2d 334, 351 (D. Md. 2004). As demonstrated below, the FTC has failed to identify *any* evidence that Maurice D'Souza purposefully directed his conduct at the United States. As discussed below, *all* the conduct of Maurice D'Souza that the FTC cites took place wholly outside the United States and it was directed at processing banks that were also located outside the United States. Accordingly, the FTC has failed to establish specific personal jurisdiction.

I.      **The FTC Has Failed to Establish General Jurisdiction Over Maurice D'Souza.**

The FTC has failed to show that Maurice D'Souza has "continuous and systematic" contacts with the United States, which is the prerequisite for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *see also Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 237 (D. Md. 1992). For contacts to be "continuous and systematic" they must be "so extensive that they are the equivalent of physical presence in the

2

forum." *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 237 (D. Md. 1992); *Serta of N. Am., Inc. v. Schar*, No. 1:03CV00711, 2004 WL 1554195, at *5 (M.D.N.C July 7, 2004).

Contrary to the FTC's assertions, the factual materials that the FTC cites in its Opposition affirmatively demonstrate that Maurice D'Souza has *no* material contact with the United States other than keeping a small amount of money on deposit at a bank in Hawaii. In particular, the materials that the FTC cites in its Opposition demonstrate the following:

- Maurice D'Souza is not a resident of the United States. Ex. 17 to the FTC's TRO Mem. at Attach. F, p. 111.

- Maurice D'Souza has conducted business in Bahrain, Qatar, Saudi Arabia, and Canada, but not in the United States. Ex. 17 to the FTC's TRO Mem. at Attach. F, p. 111.

- The corporations owned by Maurice D'Souza are outside the United States and do business outside the United States. *See* Ex. 17 to the FTC's TRO Mem. at Attach. B, p. 75 at ¶ 25; *id.* at Attach. F, p. 111

- The services that Maurice D'Souza provided to other defendants were in Bahrain and did not involve directing any activity to the United States. Ex. 1 to FTC Opp'n at Attach.C and Attach. H. Instead, they involved presenting payment authorizations given to Maurice D'Souza in Bahrain to a bank in Bahrain for processing. *Id.*

In its Opposition, the FTC paints a misleading impression that Maurice D'Souza has extensive contacts with the United States when, in fact, he does not. As shown in the following table, the FTC repeatedly misrepresents the contents of the documents it cites for its unsupported assertion that Maurice D'Souza has extensive contacts with the United States:

| **FTC Statement in its Opp'n** | **What the Cited Material Actual Says** |
|---|---|
| "Maurice D'Souza maintains *multiple personal bank accounts* in the United States" FTC Opp'n at 4 (emphasis added). | Maurice D'Souza keeps $50,000 in a bank in Hawaii. Decl. of Drexler ¶ 4, Ex. 1 to FTC Opp'n (emphasis added). |
| "Maurice D'Souza *runs* a network of businesses with *extensive ties* to the United States." FTC Opp'n at 4 (emphasis added). | "The defendants WinPayment Consultancy SPC ("Winpay"), Billing Solutions SPC ("Billsol") and Reinsurance and Insurance Consulting House SPC ("Reinsurance") are corporations incorporated pursuant to the laws of the Kingdom of Bahrain and are *owned* by Maurice." Ex. 17 to the FTC's TRO Mem. at Attach. B, p. 75 at ¶ 25 (emphasis added). |
| "On at least two previous occasions, *Maurice D'Souza has agreed* to submit to the jurisdiction of the courts of the United States." FTC Opp'n at 5 (emphasis added). | "WINPAYMENT CONSULTANCY consents to jurisdiction and venue in the state and federal courts in Royal Palm Beach, Florida." Attach. B. to FTC Opp'n at p. 4. Contract is unsigned. *Id.* at p. 6.<br><br>"Winpayment Consultancy agrees to bring any actions concerning this Agreement before a State or Federal court of competent jurisdiction in the State of New York." Ex. 1 to FTC Opp'n at Attach. B, p. 8. Contract is unsigned. *Id.* at p. 10 |
| "Maurice D'Souza boasts of extensive contacts with the United States in a January 12, 2005 letter to the payment processor CREDIMAX. In the letter, D'Souza boasts that his clients include 'Expedia.com/Travelscape Inc., USA' and Priceline.com, Inc., USA.' He also details his close relationships with US companies Yahoo, Google, MSN, ES&D International and Global Crossing." FTC Opp'n at 6. | "Winpayment Consultancy was incorporated in February 2004 to provide for Bahrain based and international clients Marketing Consultancy. Some of the factors contributing to our fast growth and that of our customers: . . Patronage from various agencies in Bahrain including Credimax. . . . List of some clients: 1. Crescent Global, 2. RICH, Bahrain, 3. Billing Solutions, Bahrain, 4. QRM, Qatar, 5. Web Integrated Net Solutions (WINS) Inc., BVI, 6. Expedia.com/Travelscape Inc., USA. 7. Priceline.com, Inc., USA. . . . We network with a number of well known web-based corporations like Yahoo/Overture, Google, MSN, etc. . . . Winpay was established as a brand new company in Bahrain." Ex. 1 to FTC Opp'n at Attach. C. |

4

| | |
|---|---|
| "Maurice D'Souza directly collected tens of millions of dollars in payments from U.S. consumers who were defrauded into purchasing the defendants 'scareware' products."  FTC Opp'n at 6. | The FTC provides no citations for this assertion. |

As set forth in the above table, the documents on which the FTC now purports to rely show that Maurice D'Souza does not have "continuous or systematic" contacts with the United States, much less such "extensive" contacts as to be "the equivalent of physical presence" in the United States.  *See Noble Security, Inv. v. MIZ Engineering, Ltd.*, No. 2:05-cv-722, 2009 WL 1004112 (E.D. Va. Apr., 14, 2009) (evaluating plaintiffs' documents on motion to dismiss and concluding that such documents were inconclusive and failed to specifically identify third-party defendants as having been "personally responsible for those sales to [the forum state]" for jurisdictional purposes).

The only contact that Maurice D'Souza has with the United States is maintaining a non-resident, personal bank account in Hawaii.  But, as a matter of law, that is insufficient for general personal jurisdiction over a foreign defendant.  *Am. Express Int'l, Inc. v. Mendez-Capellan,* 889 F.2d 1175, 1178-81 (1st Cir. 1989) (maintenance and use of bank accounts in forum is insufficient to confer general jurisdiction).

To be sure, WinPayment Consultancy, a non-U.S. corporation of which Maurice D'Souza was a shareholder, may have engaged in transactions with "U.S.-based companies" (FTC Opp'n at 5), but that is an insufficient basis for this Court to assert general personal jurisdiction over its shareholder Maurice D'Souza.  Indeed, the FTC provides no evidence that any business with these "U.S.-based companies" occurred in the United States, concerned United States consumers, or even affected United States commerce.  Even assuming certain companies in which Maurice

D. Souza was a shareholder had contacts with the United States,[1] "an individual's status as a control person of a corporation that has jurisdictional contacts with the United States, standing alone, is insufficient to establish personal jurisdiction." *In re Royal Ahold*, 351 F.Supp.2d 334, 351 (D. Md. 2004); *see generally D'Onofrio v. SFX Sports Grp., Inc.*, 534 F.Supp. 2d 86, 90 (D.D.C. 2008) ("As a general rule, courts cannot exert jurisdiction over individual corporate officers or employees just because the court has jurisdiction over the corporation.").

Even if the acts of foreign corporations could be attributable to their foreign shareholders, the FTC has failed to show that any of the corporations in which Maurice D'Souza is a shareholder has "continuous or systematic" contacts with the United States. To be sure, the FTC has found ledger entries showing that Winpayment Consultancy and Winsecure Solutions had "dozens" of transactions with "U.S. based companies," but each of these companies does business *outside* the United States, and the ledgers do not establish that any of these transactions took place in the United States or related to the United States. *See* Ex. 17 to the FTC's TRO Mem. at Att. L, pp. 133-201. But even if some of those corporate transactions related to the United States, that would be insufficient to establish general jurisdiction. *See, e.g., Helicopteros*, 466 U.S. at 418 (1984) (no general jurisdiction in Texas over helicopter transportation company that purchased 80 percent of its helicopters, spare parts, and accessories from Texas sources over a four year period); s*ee also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (stating that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."). This is hardly surprising because any limits on a court's general jurisdiction would be

---

[1] The FTC refers to WinSecure Solutions (FTC Opp'n at 5), but the FTC has presented no evidence that WinSecure had any contracts with any entities in the United States.

eviscerated if every company or entity that had *any* business even remotely touching the United States could be hailed into United States courts.

The FTC also erroneously argues that Maurice D'Souza is subject to general jurisdiction because corporations in which he was a shareholder allegedly had two unexecuted and undated contracts with boilerplate forum selection clauses providing for suits in the United States for disputes arising out of those contracts. However, consent by a corporation is not the same thing as consent by a shareholder. *See Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996) ("[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound."); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) ("the choice of forum provision in the airplane purchase agreement applies only to disputes arising out of those agreements."). Moreover, "choice of law provisions cannot alone establish [personal] jurisdiction." *Noble Security, Inv. v. MIZ Engineering, Ltd.*, No. 2:05-cv-722, 2009 WL 1004112, at *11 2009 WL 1004112 (E.D. Va. Apr., 14, 2009).

Maurice D'Souza's contacts with the United States are far less than the corporate contacts of the defendant in the principal case upon which the FTC relies—*Coremetirics, Inc. v. Atomic Parkt.com, LLC*, 370 F.Supp. 2d 1013, 1017-25 (N.D. Cal. 2005). That case involved personal jurisdiction over a foreign corporation, not over its shareholders, and the corporation over which the Court asserted jurisdiction had a presence in California because it operated as an "e-tailer" which offered all of the same services that a "bricks and mortar" retailer operating in California. *Id.* at 1021. And, even then, the court acknowledged that it was a "close call" in determining whether to exercise personal jurisdiction.[2] *Id.* Here, in contrast, the only contact

---

[2] Significantly, the court also noted that the *least* significant factor in its analysis was the corporation's contracts with California corporations and forum selection clause in those contracts. *Id.* at 1024.

that Maurice D'Souza has with the United States is the deposit of $50,000 at an Hawaiian bank. In sum, there is no basis for general personal jurisdiction over Maurice D'Souza.

## II. The FTC Has Failed to Establish Specific Jurisdiction Over Maurice D'Souza.

To establish specific jurisdiction the FTC must demonstrate that (1) Maurice D'Souza has personally availed himself of the privilege of acting in the forum by either engaging in or directing conduct in the United States; (2) the cause of action arises from such conduct in the forum state; and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *ALS Scan Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710-12 (4th Cir. 2002). None of the evidence that the FTC cites in its Opposition establishes that Maurice D'Souza engaged in or directed any conduct "in" or "at" the United States giving rise to the FTC's cause of action. To be sure, the FTC has evidence that other defendants engaged in allegedly unlawful conduct in the United States, but the FTC "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over an individual defendant." *D'Onfrio,* 534 F.Supp. 2d at 90. As this Court noted in *Technology Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 913 (D. Md. 2008) "doing business with a company that does business in [the forum] is not the same as doing business in [the forum]." To establish specific personal jurisdiction over Maurice D'Souza, the FTC would have to identify conduct that Maurice D'Souza either engaged in or directed in the United States that gave rise to the FTC's allegations for fraud. The FTC has not done so.

In support of its assertion of specific personnel jurisdiction, the FTC cites the following statements in a brief filed in another litigation by another defendant, Marc D'Souza:

- "In order to save the Business it was necessary for Marc and Maurice to assume financial control of the Business." FTC Opp'n at 7.

- "Marc and Maurice set about creating a new business model whose structure was crated by Marc and Maurice alone." *Id.*
- "Many of the Business' expenses were billed to credit card accounts opened for the Business in the name of Marc and/or Maurice." *Id.* at 8.

These statements were made by Marc D'Souza's lawyer in Canada in an unverified pleading that was stricken by the Canadian court—not in an affidavit of Marc D'Souza as the FTC stated in its Opposition.[3] *Id*. at 7.  Even if one individual's statements are considered true and admissible against a different individual (which they are not[4]), the statements cited by the FTC do not establish specific personal jurisdiction over Maurice D'Souza because (i) they are silent as to whether Maurice D'Souza *engaged* in *any* conduct in the *United States* or *directed* any conduct in or to the United States that gives rise to the FTC's complaint when he allegedly "assume[d] financial control of the Business" (ii) they fail to show that the undefined "Business" over which Maurice D'Souza assumed financial control was engaged in conduct in the United States, and as set forth below suggest, to the contrary, that the "new business model" was based on conduct outside the United States, (iii) they fail to show whether the undefined  "financial control" means anything more than submitting preauthorized credit card authorizations for payment to foreign banks, and (iv) they fail to show that Maurice D'Souza ever used his credit card for any of the practices alleged by the FTC.

Read in context, the statements in the unverified pleading submitted by Marc D'Souza in the Canadian litigation refer to a business *outside* the United States:  "[I]n order to save the

---

[3]  A review of the document cited by the FTC reveals that it is not an "affidavit" but rather an unverified pleading submitted by Marc D'Souza by and through his counsel.  *See* Ex. 17 to the FTC's TRO Mem., at Attach. B.
[4] These statements constitute inadmissible hearsay.  F.R.E. 801; *see Tracinda Corp. v. DaimlerChrysler AG*, 362 F.Supp.2d 487, 498-99 (D. Del. 2005) (holding that allegations made in a complaint in a prior case were inadmissible hearsay to prove that the Court had personal jurisdiction over the defendant).

9

Business it was necessary for Marc and Maurice to assume financial control of the Business. *The Business was transformed from an organization controlled in the United States to an international one.*" Statement of Defence and Counterclaim of the Defendant Marc D'Souza, Ex. 17 to the FTC's TRO Mem. at Attach. B, p. 101 at ¶ 118 (emphasis added). Not only does the FTC misstate the source of this quote, it affirmatively misleads the Court by omitting key language. To the extent that Maurice D'Souza created "a new business model," it was to conduct financial business outside the United States. *Id.* at ¶ 121(a). Because the new business was not a United States business, it could lawfully engage in "more aggressive advertising" as Marc D'Souza's Canadian attorney notes in the unverified Canadian pleading. *Id.* at ¶ 125.

To be sure, as Maurice D'Souza stated in the Canadian litigation, he provided valuable, if not essential, services to his clients, including some of the defendants—by establishing merchant bank processing relationships with a Bahrain bank—but those services were provided *outside* the United States, and there is *no* evidence whatsoever that Maurice D'Souza played *any* role in defrauding United States consumers or improperly seeking credit-card authorizations. Any United States credit card authorizations Maurice D'Souza received were received outside the United States after the consumer authorized the payment. While a U.S. court might well have personal jurisdiction over the person who secured the credit card authorization in the United States, it would not have personal jurisdiction over an entity outside the United States that merely presents the already-completed authorization to a non-U.S. bank. *See Meridian Enterprises Corp. v. C/Base Inc.*, No. 4:04CV1522-DJS, 2005 WL 1983801, at *2 (E.D. Mo. Aug. 15, 2006) (finding specific jurisdiction did not exist in Missouri based on the issuance of a debit card in Georgia that ended up in Missouri and requiring that "there must be some additional act to satisfy the constitutional due process requirements. . .").

There is no basis for the FTC's bald assertion that Maurice D'Souza was the "financial mastermind of the defendants' scareware enterprise" or that he is "responsible for $50.7 million dollars [sic] of consumer injury in the United States." Indeed, these assertions are particularly surprising assertions in light of the fact that the FTC did not name Maurice D'Souza as a regular defendant. FTC Opp'n at 6-7, 9-10. The FTC presents no evidence that Maurice D'Souza provided any services to any of the Innovative Marketing defendants after 2006 (when most of the conduct alleged in the FTC Complaint took place), or that he was aware of or involved with the advertising claims that the Innovative Marketing defendants were making when he did provide financial services to them. None of the information that the FTC cites supports such a conclusion.

The FTC cites an exhibit to an affidavit of Daniel Sundin entitled "Innovative Marketing, Marketing Organization" for the assertion that Maurice D'Souza is responsible for $50.7 million dollars [sic] of consumer injury in the United States." *See* FTC Opp'n at 9-10 and Ex. 1 at Attach. E. However, that document shows nothing of the sort. Although the document refers to "aggressive" marketing in the United States, it makes *no* reference whatsoever to Maurice D'Souza—never listing him in the organizational chart of Innovative Marketing. *See* Ex. 1 to FTC Opp'n at Attach. E, p. 6.

The FTC also cites an "an email from Maurice D'Souza in which he refers to defendant Innovative Marketing as one of his 'associated companies.'" FTC Opp'n at 10. However, read in context, the email is referring to companies for which it provides financial services *in Bahrain*, not in the United States. *See* Ex. 1 to FTC Opp'n at Attach. H. Moreover, even if Innovative Marketing were "associated" with Maurice D'Souza in some greater way, that would not mean that Maurice D'Souza engaged in any conduct in the United States to defraud United

States consumers or that he is responsible for conduct of "associates" that he was unaware of and did not direct.[5]  The FTC has presented no evidence that Maurice D'Souza was aware of the kinds of marketing engaged in by Innovative Marketing.

Similarly misplaced is the FTC's reliance on "an email from Innovative Marketing 's Finance and Accounting Department Chief reminding Marc D'Souza to grant Innovative Marketing online access to the bank accounts held by Maurice D'Souza's wholly-owned companies."  FTC Opp'n at 10 (citing Ex. 1 at Attach. G).  Even if the requested access had been granted, it still would not have involved conduct in the United States nor evidenced any participation by Maurice D'Souza in fraudulent conduct in the United States.

The FTC also cites a "chart [prepared at defendant Sam Jain's request] shows $18.415 million dollars in Innovative Marketing revenues transferred directly to Maurice D'Souza, along with tens of millions of dollars transferred to Maurice's companies, including WinSecure and WinPay."  FTC Opp'n at 10.  However, that document is opaque, largely illegible, and hardly self-explanatory.  *See* Ex. 1 to FTC Opp'n at Attach. F.  On its face it does not show any transfer of illegal proceeds to Maurice D'Souza, as the FTC contends.  Indeed, the references may be nothing more than estimates of the amount of the authorizations that Maurice D'Souza submitted to merchant processors in Bahrain.  In any event, the relevant issue is not whether money was submitted to foreign banks for processing nor even how much Maurice D'Souza earned, but rather *how* and *where* he earned it.  Here, the FTC has failed to show that Maurice D'Souza engaged in conduct in the United States, much less generated revenue from such conduct.

---

[5] The FTC asserts that in a 2005 document Marc D'Souza considered WinPayment Consultancy and WinSecure to be part of the "Win Group" that also includes Innovative Marketing.  *See* FTC Opp'n at 9 (citing Ex. 17 to the FTC's TRO Mem. at Attach. K, pp. 65-93).  However, no matter what Marc D'Souza may have thought, the FTC has presented no evidence that Maurice D'Souza agreed.  But, even if he did, a mere undefined "association" does not make one associate responsible for all the conduct of another associate.

In sum, despite the more than five volumes of documents presented by the FTC to this Court in connection with its Motion for a TRO and its current Opposition , there is not a single piece of evidence —as distinct from conclusory assertions or alleged evidence against other defendants—that shows that Maurice D'Souza engaged in or directed any of the operations of defendant companies *in or directed at the United States*, received any funds *in the United State*s, or participated in any other conduct *in the United States* related to the alleged misconduct of the other defendants.  As the evidence attached to the FTC's brief demonstrates, Maurice D'Souza's role was confined to contracting outside the United States with the defendant companies to provided financial services outside the United States, and he was not involved in the selling of any of the products referenced in the complaint in the United States.  *See* Ex. 17 to the FTC's TRO Mem. at Attach. B, p. 101; Ex. 1 to FTC Opp'n at Attach. H.   Accordingly, the FTC has failed to provide a basis for specific personal jurisdiction over Maurice D'Souza.

Accordingly, the FTC's reliance on *In re Royal Ahold* and *SEC v. Dowdell*, Civ. A. No. 01CV00116, 2002 WL 424595, at *12-14 (W.D. Va. Mar. 14 2002) is misplaced.  It does not support the exercise of specific personal jurisdiction over Maurice D'Souza.  The foreign defendants in *Royal Ahold* and *Dowdell* engaged in illegal conduct *in the United States*.   In *Royal Ahold*, the defendants were three executives of a foreign corporation who purposefully availed themselves of the laws of the United States by signing filings with the Securities Exchange Commission. *In re Royal Ahold*, 351 F.Supp.2d at 351.  Moreover, the court noted that "in deciding the personal jurisdiction question, I will not simply examine acts taken by a corporation and attribute them to the corporate executives, but I will consider an individual defendant's actions directed at the forum, even if those acts were done in the defendant's corporate capacity." *Id.*  In *Dowdell*,  the court only addressed whether the court had personal

jurisdiction over a corporation and not the individual officers or employees, and the court found that the "core operations" of the corporation were conducted in the United States, which is not the case with respect to any companies in which Maurice D'Souza is an investor. *SEC v. Dowdell*, Civ. A. No. 01CV00116, 2002 WL 424595, at *12-14 (W.D. Va. Mar. 14 2002).

Finally, the FTC argues that the Court should find personal jurisdiction over Maurice D'Souza because otherwise it will be "difficult and inconvenient" for the FTC to litigate this case, suggesting that if the case is dismissed against Maurice D'Souza, there will be no money available to pay back consumers. FTC Opp'n at 11-12. However, unlike the defendant seeking dismissal in *Christian Science Board of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001), Maurice D'Souza is not even alleged to have violated the law. He is merely alleged to be a "relief defendant." Moreover, as the FTC knows, but did not disclose to the Court, the Canadian litigation to which it repeatedly refers resulted in a recovery by the Innovative Marketing defendants of money that had been held by Maurice D'Souza. Thus, the FTC cannot establish *any* link between the money currently held by Maurice D'Souza and the alleged wrongdoing.[6]

## CONCLUSION

Because the FTC has failed to meet its burden of showing either general or specific personal jurisdiction over Maurice D'Souza, the motion to dismiss the complaint against him should be granted.[7] "However convenient it might be for the government to . . . seize property

---

[6] While such a link may not be necessary for an asset freeze directed at a real defendant who is jointly and severally liable for all damages, it is necessary for an asset freeze against a relief defendant. *CFTC v. Kimberlynn Creek Ranch, Inc.,* 276 F.3d 187, 190 n.1 (4th Cir. 2002) (noting that an asset freeze of a relief defendant must be limited to funds that are "held by the Relief Defendants on behalf of the Claim Defendants" and cannot include "assets in which the Relief Defendants have an ownership interest."

[7] There is no need for discovery regarding Maurice D'Souza's contacts with the United States as the FTC alternatively requests. The FTC already has assembled an exhaustive record, including the record in the Canadian litigation, and has failed to show any such contact. To the extent that any discovery is permitted, any deposition of Maurice D'Souza should take place in Singapore where he currently resides. The FTC's assertion that "requiring

that it contends is forfeitable," the FTC cannot do so in the absent personal jurisdiction.  *U.S. v. Kirschenbaum,* 156 F.3d 784, 795 (7th Cir. 1998).

Dated:  May 11, 2009                                         Respectfully submitted,

/s/ _____
Michael J. Madigan (*pro hac vice*)
Russell D. Duncan (Bar No. 14904)
Garret G. Rasmussen (*pro hac vice*)
Jonathan A. Direnfeld (Bar No. 28859)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 339-8400

*Attorneys for Relief Defendant Maurice D'Souza*

---

Maurice D'Souza to defend himself in the United States would not significantly burden him" is false.  *See* Reply Mem. in Support of Maurice D'Souza"s Mot. for a Protective Order, filed today.  As Attachment C of the FTC Opp'n indicates, medical problems make travel very difficult for Maurice D'Souza.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2009, a copy of the foregoing Relief Defendant's Maurice D'Souza's was served upon all counsel of record through the Court's ECF system.

/s/
Michael J. Madigan