## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

```
-------------------------------------------------------------
Federal Trade Commission                     )
                                             )
                      Plaintiff,             )
                                             )
        v.                                   )      Civil No.:  RDB 08-CV-3233
                                             )
Innovative Marketing, Inc., et al.           )
                                             )
                      Defendants,            )
                                             )
AND                                          )
                                             )
Maurice D'Souza                              )
                                             )
                      Relief Defendant.      )
-------------------------------------------------------------
```

## ANSWER

Defendant Kristy Ross ("Defendant"), by and through her attorneys, hereby

answers Plaintiff's Complaint as follows:

1.      The Commission brings this action under Section 13(b) of the Federal
Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain preliminary and
permanent injunctive relief against the Defendants to prevent them from engaging in
deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),
and to obtain other equitable relief, including rescission, restitution, and disgorgement, as
is necessary to redress injury to consumers and the public interest resulting from the
Defendants' violations of the FTC Act.

**ANSWER:**    Defendant admits that Plaintiff has brought an action asserting 15 U.S.C. §

53(b), and that Plaintiff's Complaint seeks injunctive and other relief.  Defendant denies the

remaining allegations of paragraph 1 and specifically denies the allegations to the extent they

suggest that she has committed any deceptive acts or practices alleged in the Complaint.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a), 53(b), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

**ANSWER:**      Paragraph 2 asserts legal conclusions to which no response is required.

3.      Venue in the United States District Court for the District of Maryland is proper under 15 U.S.C. § 53(b), as amended by the FTC Act Amendments of 1994, Pub. L. No. 103-312, 108 Stat. 1691, and 28 U.S.C. §§ 1391(b), (c) and (d).

**ANSWER:**      Paragraph 3 asserts legal conclusions to which no response is required.

### PLAINTIFF

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United States government created by statute.  15 U.S.C. §§ 41-58.  The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits deceptive or unfair acts or practices in or affecting commerce.  The Commission is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers, consumer redress, and disgorgement.  15 U.S.C. § 53(b).

**ANSWER:**      Defendant admits the allegations contained in paragraph 4.

### DEFENDANTS

5.      Defendant Innovative Marketing, Inc. ("Innovative Marketing ) is a corporation incorporated pursuant to the laws of Belize that maintains offices in Kiev, Ukraine.  Innovative Marketing does or has done business as Billingnow, BillPlanet PTE Ltd., Globedat, Innovative Marketing Ukraine, Revenue Response, Sunwell, Synergy Software BV, Winpayment Consultancy SPC, Winsecure Solutions, and Winsolutions FZ-LLC.  Innovative Marketing transacts or has transacted business in this District.

**ANSWER:**      The subject matter of the complaint in this case is the basis for an ongoing investigation conducted by the U.S. Attorney for the Northern District of Illinois.  Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 5 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically

2

denied the allegation.[1]

6.      Defendant Bytehosting Internet Services, LLC ("Bytehosting ) is a limited liability company registered in Ohio that maintains offices at 3864 McMann Road, Suite A, Cincinnati, Ohio.  Bytehosting transacts or has transacted business in this District.

**ANSWER:**      Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph 6

on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

7.      Defendants Innovative Marketing and Bytehosting have operated as a common enterprise while engaging in the deceptive acts and practices alleged herein (the "IMI Enterprise").

**ANSWER:**      Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph 7

on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

8.      Defendant James Reno is, or has been, an officer and/or director of Bytehosting.  Individually or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of the IMI Enterprise alleged in this complaint, and has done so at all times pertinent to this action.  Defendant Reno does or has done business as "setupahost.net."  Defendant Reno resides or has resided in this District and transacts or has transacted business in this District.

**ANSWER:**      Exercising her rights under the Fifth Amendment to the Constitution of the

---

[1] **NOTE:  The language for this answer is paraphrased from language used in a defendant's answer in *National Acceptance Company of America v. Bathalter*, 705 F.2d 924, 926 (7th Cir. 1983).  In that case, the Seventh Circuit held that a defendant can claim Fifth Amendment privilege at the pleading stage of a civil case.  *Id.* at 927.**

United States, Defendant respectfully declines to answer the allegations contained in paragraph 8 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

9.     Defendant Sam Jain is, or has been, an officer and/or director of Innovative Marketing. Individually or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of the IMI Enterprise alleged in this complaint, and has done so at all times pertinent to this action. Defendant Jain resides or has resided in California and transacts or has transacted business in this District.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 9 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

10.     Defendant Daniel Sundin is, or has been, an officer and/or director of Innovative Marketing. Individually or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of the IMI Enterprise alleged in this complaint, and has done so at all times pertinent to this action. Defendant Sundin does or has done business as Vantage Software and Winsoftware, Ltd. Defendant Sundin resides or has resided in London, England, and transacts or has transacted business in this District.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 10 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

11.     Defendant Marc D' Souza is, or has been, an officer of Innovative Marketing. Individually or in concert with others, he has formulated, directed,

controlled, or participated in the acts and practices of the IMI Enterprise alleged in this complaint.   Defendant D'Souza does or has done business as Web Integrated Net Solutions.  Defendant D'Souza resides or has resided in Toronto, Canada, and transacts or has transacted business in this District.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 11 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

12.     Defendant Kristy Ross is, or has been, an officer of Innovative Marketing. Individually or in concert with others, she has formulated, directed, controlled, or participated in the acts and practices of the IMI Enterprise alleged in this complaint, and has done so at all times pertinent to this action.  Defendant Ross resides or has resided in Maryland, and transacts or has transacted business in this District.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 12 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

13.     Relief Defendant Maurice D'Souza is the father of Marc D'Souza. Maurice D'Souza has received ill-gotten funds that are the proceeds of the unlawful acts and practices alleged in this complaint, and has no legitimate claim to those funds. Maurice D'Souza is a resident of Ontario, Canada, and has received funds from business transacted in this District.

**ANSWER**:     Defendant lacks information sufficient to admit or deny the allegations in paragraph 13 and, therefore, deny the same.

## COMMERCE

14.     At all times relevant to this complaint, the Defendants have maintained a

substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**ANSWER:**   Defendant denies the allegations of paragraph 14 to the extent the allegations pertain to her actions, and denies the remaining allegations on the basis that Defendant lacks information with respect to the actions of the other defendants named in this action.

## DEFENDANTS' BUSINESS PRACTICES

### Overview

15.   The Defendants operate a massive, Internet-based scheme that tricks consumers into purchasing computer security software.  Known in Internet parlance as "scareware," Defendants' software—and the misleading Internet advertising used to promote it—exploits consumers' legitimate concerns about Internet-based threats like spyware and viruses by issuing false security or privacy warnings to consumers for the sole purpose of selling software to fix the imagined problem.

**ANSWER:**   Defendant denies the allegations of paragraph 15.

16.   The Defendants' scareware scheme relies on elaborate and technologically sophisticated Internet advertisements that Defendants place with advertising networks and many popular commercial websites.  These exploitive ads display to consumers a "system scan" that invariably detects on consumers' computers a host of malicious or otherwise dangerous files and programs, including viruses, spyware, or "illegal" pornography.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 16 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

17.   Once the scan is complete, the Defendants urge consumers to download and install their software to resolve the security or privacy problems detected by the scanner. In many instances, consumers who agree to install the software are then presented with another scan initiated by the Defendants' software.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 17 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

18.    This second, software-based, scan repeats many of the same warnings from the initial scan and urges consumers to purchase the Defendants' software at a cost of $39.95 or more to resolve the security or privacy issues found by the scanner.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 18 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

19.    In reality, the scans displayed in the Defendants' Internet advertisements and by the Defendants' software are an elaborate ruse created to dupe consumers into purchasing the Defendants' security software products.  Although the Defendants go to great lengths to make the scans appear legitimate, no actual computer scans take place and the purported virus, spyware, or illegal pornography purportedly detected by the Defendants' scanners does not exist on consumers' computers.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 19 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

20.    Unaware of the Defendants' trickery, more than one million consumers have purchased the Defendants' software products to cure their computers of the non-existent problems "detected by the Defendants' fake scans.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 20 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

21.    Although some consumers later realize they have been defrauded by Defendants and attempt to seek refunds, Defendants routinely delay, obstruct and refuse to honor such requests.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 21 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

### The Defendants' False and Misleading Representations

22.    Since 2003 or earlier, the Defendants have conspired to market a wide array of computer security software via deceptive advertising.  These software products include, but are not limited to, "WinFixer," "WinAntivirus," "DriveCleaner," "WinAntispyware," "ErrorProtector," "ErrorSafe," "SystemDoctor," "AdvancedCleaner," "Antivirus XP," and "XP Antivirus 2008."

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 22 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

23.    Regardless of the product being pitched, Defendants employ the same modus operandi - bogus scans that falsely detect the presence of dangerous or illegal files

or programs on consumers' computers.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

23 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

      24.   For instance, when marketing their AdvancedCleaner program,
Defendants disseminate exploitive advertisements that redirect consumers from the
website they are viewing to the AdvancedCleaner website.  Defendants then display a
"system scan that purports to search consumers' computers for "privacy violations.  As
the scan unfolds, Defendants display a series of hard-core pornographic pictures,
which the Defendants falsely claim reside on consumers' computers.  The
Defendants then offer consumers the opportunity to rid their computers of these
images by downloading and installing AdvancedCleaner.

A screenshot of the Defendants' AdvancedCleaner scan appears below:



**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph 24 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

25.     Once consumers download and install AdvancedCleaner, Defendants present consumers with another bogus scan, which is initiated by the Defendants' software.   This second scan, which is displayed below, repeats many of the same misrepresentations made in the original advertisement, including this dire warning:

**216 Adult Content Detected** *[sic]*

**Your PC has stored 216 items that are dangerous to your reputation ...**
**To protect your family/career/property and get rid of these compromising**
**contents, you need to hide them completely by means of AdvancedCleaner. For**
**software registration, please click the "Register Now!" button.**

A screenshot of the software-initiated warning appears below:



**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

25 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

        26.     The representations in Paragraphs 24 and 25 are wholly false.  Defendants
have not scanned consumers' computers and have not found "illegal porn" or "adult files"
on consumers' computers.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

26 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

> 27.    Many consumers exposed to the Defendants' fake scans proceed to purchase AdvancedCleaner at a cost of $39.95, or more, to remove from their computers the files purportedly detected by the Defendants' fake scans.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

27 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

> 28.    Defendants use similar "fake scan" tactics to sell their various other software products, including WinAntivirus and DriveCleaner.

**ANSWER:**    The subject matter of the complaint in this case is the basis for an ongoing

investigation conducted by the U.S. Attorney for the Northern District of Illinois.  Exercising her

rights under the Fifth Amendment to the Constitution of the United States, Defendant

respectfully declines to answer the allegations contained in paragraph 28 on the ground that her

answer might tend to incriminate her.  Defendant further respectfully requests that such

declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically

denied the allegation.

> 29.    For example, in the advertisement below for WinAntivirus, Defendants represent that an "infection" identified as "W32.ZOTOB.C@mh has been detected on, and that a "remote computer" has gained access to, the computer on which the ad is displayed.  Both of these representations are false.



**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 29 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

30.   Similarly, in the advertisement below for DriveCleaner, Defendants represent that they have scanned the computer on which the ad is displayed and detected 948 "COMPROMISING & INTERNET TRACK FILES."  These representations are false.  Defendants have not scanned the computer, and have not detected 948 "COMPROMISING & INTERNET TRACK FILES."



**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

30 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

      31.    Many consumers exposed to the false representations in Defendants'
WinAntivirus and DriveCleaner advertising proceed to purchase the programs at a cost of
$39.95, or more, in order to resolve the imagined security problems "detected" in the ads.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

31 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

### The Defendants' Deceptive Marketing Efforts from 2004-2007

32.     In 2004 or earlier, the Defendants began placing false and misleading advertisements for their software products with major Internet advertising networks, including the MyGeek network (now known as the AdOn network).   Advertising networks like MyGeek serve as advertising brokers, distributing advertisements to their website partners across the Internet.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 32 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

33.     Defendant Ross placed more than $3.3 million dollars worth of ads for the Defendants' products with the MyGeek network between October 2004 and November 2006. Ross used a variety of methods to pay for these advertisements, including international wires from an account identified as "Innovative Marketing, Inc.," and credit cards belonging to Defendants Marc D' Souza and Daniel Sundin.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 33 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

34.     In return, MyGeek contracted with its partners across the Internet to display the Defendants' advertisements, many of which were similar in function and appearance to those in Paragraphs 24, 25, 29 and 30. Ross purchased nearly 680 million "impressions" - unique displays of the Defendants' ads - from MyGeek alone, including

ads for "WinFixer," "ErrorProtector," "WinAntivirus," "DriveCleaner," "ErrorSafe," and "SystemDoctor."

**ANSWER:** Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 34 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

35. The advertisements placed by Defendant Ross on the MyGeek network quickly drew complaints from MyGeek's advertising partners. On multiple occasions, representatives from MyGeek chastised Defendant Ross for placing advertisements that contained "auto-downloads" -- advertisements that attempted to install the Defendants' software without consumer consent. MyGeek also warned Defendant Ross to stop placing ads that involuntarily redirected users to websites owned by the Defendants. Although Ross promised to fix the offending ads - and claimed that these ads were mistakes - all such "fixes" proved temporary. Despite multiple warnings to Defendant Ross, MyGeek continued to receive complaints about ads placed by Defendant Ross.

**ANSWER:** Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 35 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

36. On September 1, 2006, Ross received an email from a MyGeek representative informing her that several of MyGeek's advertising partners would not run ads for anti-virus and anti-spyware products, including the Defendants' products. In response, Ross offered to remove MyGeek's advertising partners' adware programs from the list of threats Defendants' security programs detect on consumers' computers:

We are 100% able to keep their product OUT of the database if they are willing to run the advertisements. You might also consider presenting that. I can do it with all the software sources we run.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 36 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

37.    On March 29, 2007, MyGeek informed Ross via email that it would no longer accept advertising for the Defendants' products. Ross replied that "we have some 500 [other] advertising deals" and reminded MyGeek that "we alone have spent well over a million dollars with your company."

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 37 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

### The Defendants' Recent Deceptive Marketing Efforts

38.    With major advertising networks like MyGeek refusing to accept the Defendants' advertisements, the Defendants have embarked on an elaborate scheme to dupe advertising networks and commercial websites into accepting their deceitful advertising.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 38 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

39.    In furtherance of this scheme, the Defendants have created a number of sham Internet advertising agencies, which place advertisements exclusively for the

17

Defendants' products. These captive advertising agencies, including "Burn Ads," "Preved Marketing," "AdTraff," "NetMediaGroup," and "Unigads," approach popular advertising networks and commercial websites offering to purchase advertising space on behalf of legitimate companies, including CareerBuilder.com, FrontGate, Travelocity.com, Priceline.com, and even OxFam International, an anti-poverty charity. Although these legitimate companies and organizations have no affiliation with the Defendants, and have never authorized the Defendants to place advertising on their behalf, the Defendants falsely represent that they are authorized to place the advertisements.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

39 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

      40.    The Defendants then supply the targeted advertising network or website with a technologically sophisticated electronic advertisement, which is capable of displaying different content depending on a variety of criteria, including the Internet Protocol ("IP" ) address of the viewer.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

40 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

      41.    When this advertisement is viewed from a computer with an IP address associated with the advertising network or website upon which they are advertising, or any other IP range chosen by the Defendants, the advertisement appears as promised - as a banner ad for the legitimate company or organization Defendants claim to represent. As a result, when the advertising staff of the targeted advertising network or website views the ad, they see nothing unusual and proceed to approve the Defendants' ad for distribution.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph 41 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

       42.      However, due to hidden programming code inserted by the Defendants, the Defendants' advertisements appear entirely differently to those outside of this "walled off" IP range.  Consumers with an IP address outside of the IP range walled off by the Defendants receive an exploitive ad that takes them from the website they are visiting to one of the Defendants' websites.  At this point, one of the Defendants' fake scans commences and proceeds to "detect a host of critical issues that need immediate attention.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 42 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

       43.      Since 2007, the Defendants have used their stealthy and deceitful methods to place advertisements on a number of popular Internet websites.  As a result, Defendants' ads have redirected visitors on official websites such as Major League Baseball (mlb.com), the National Hockey League (nhl.com), The Economist magazine (economist.com), the National Association of Realtors (realtor.com), Zillow.com, and the popular Internet dating site E-Harmony (eharmony.com), to the Defendants' websites, where the Defendants then launch their bogus scans.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 43 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

**The Role of James Reno**

44.     Defendant Reno provides much of the technical expertise required to propagate the Defendants' scam.  Reno has advanced computer skills and serves as a senior executive within the Defendants' enterprise.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the rest of the allegations contained in paragraph 44 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

45.     Reno has entered into key contracts with vendors on behalf of the IMI Enterprise.  One such contract was with LimeLight Networks, Inc., a content-distribution company that enables users with high-bandwidth needs to distribute their content efficiently to Internet users around the world.

**ANSWER:**     Defendant is without knowledge of the allegations in paragraph 45 and thus denies the allegations on that basis.

46.     Records from LimeLight Networks show James Reno as the primary contact for the content distribution agreement between LimeLight Networks and a company listed as "SetUpAHost."  The same records show Reno's email address as james@setupahost.net.

**ANSWER:**     Defendant is without knowledge of the allegations in paragraph 46 and thus denies the allegations on that basis.

47.     Setupahost.net is a domain hosted in Ontario, Canada, that is operated by the Defendants.  The Setupahost.net domain houses much of the Defendants' software as well as the images that are used in the Defendants' deceptive advertisements.  Reno has made multiple trips to Ontario to maintain and reconfigure the servers used by the Defendants to host their websites.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in the first and

second sentences of paragraph 47 on the ground that her answer might tend to incriminate her. Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

> 48.     Reno, through his company Bytehosting, is also responsible for managing the Defendants' call center, and is the owner of several of the technical support phone numbers used by the IMI Enterprise.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 48 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

> 49.     The IMI Enterprise's call center frequently receives calls from consumers who have been tricked into purchasing the Defendants' products by the Defendants' false and misleading advertising, and are requesting a refund. Call center staff routinely obstruct and delay these consumers from obtaining refunds by misleading consumers about the legitimacy of the fake scan that led them to purchase the software, falsely telling consumers a refund has been issued when it has not, or refusing to return calls from consumers seeking refunds.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 49 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

> 50.     Reno owns and operates Bytehosting as part of a common enterprise with Innovative Marketing. Reno and Bytehosting perform a variety of functions for Innovative Marketing that perpetuate Defendants' scheme to defraud consumers Bytehosting is referred to as the "Ohio office" of IMI Enterprise. Bytehosting relies on IMI Enterprise for virtually all of its revenue. In addition, IMI Enterprise purchased computer equipment for Bytehosting and on numerous occasions wired funds to

Bytehosting for the express purposes of paying payroll, rent, taxes, and utilities.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 50 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

### The Role of Sam Jain

51.     Sam Jain is the Chief Executive Officer of Innovative Marketing. Jain, along with Daniel Sundin and Kristy Ross, formed Innovative Marketing in 2002. Jain later recruited Marc D'Souza to join the IMI Enterprise.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 51 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

52.     Jain is involved in all aspects of the IMI Enterprise's business affairs, including marketing and sales**,** and has personally invested a large amount of capital into the company.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 52 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

53.     Jain has been responsible for developing relationships with payment processors who could process the IMI Enterprise's credit card transactions.   After

experiencing difficulty in maintaining these relationships, Jain ceded this role to Marc D'Souza.

**ANSWER:**   Defendant is without knowledge of the allegations contained in the second sentence of paragraph 53 and thus denies them.

### The Role of Daniel Sundin

54.    Daniel Sundin is the former Chief Operating Officer and current Chief Technology Officer of Innovative Marketing.  Sundin incorporated Innovative Marketing in Belize and is the company's sole shareholder.

**ANSWER:**   Defendant admits that Defendant Daniel Sundin has been an officer and/or director of Innovative Marketing.  Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the rest of the allegations contained in paragraph 54 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

55.    Sundin set up Innovative Marketing's headquarters in Kiev, Ukraine, and also opened facilities in Argentina and India.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 55 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

56.    Through his now-defunct company, Vantage Software, Sundin registered and paid for many of the Defendants' primary websites, including WinFixer.com, DriveCleaner.com, ErrorProtector.com, WinAntivirus.com, and SystemDoctor.com.

**ANSWER:**   Exercising her rights under the Fifth Amendment to the Constitution of the

23

United States, Defendant respectfully declines to answer the allegations contained in paragraph

56 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

   57. Sundin controls foreign bank accounts, including an account in Sweden, that are used to fund the Defendants' activities, including the account used to pay for the false and misleading advertisements placed by defendant Ross on the MyGeek network. Sundin has also used multiple personal credit cards and bank accounts to fund the Defendants' activities.

  **ANSWER:** Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

57 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

### The Roles of Marc D'Souza and Maurice D'Souza

   58. Until his departure from the IMI Enterprise in late 2006, Marc D'Souza handled the company's finances, and was responsible for developing relationships with payment processors who could process the huge volume of credit card charges generated by the IMI Enterprise.

  **ANSWER:** Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph

58 on the ground that her answer might tend to incriminate her.  Defendant further respectfully

requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if

she specifically denied the allegation.

   59. With assistance from his father, Maurice D'Sozua, Marc D'Souza was able to establish numerous merchant accounts with various payment processors around the world.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 59 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

60.    Marc D' Souza's role was especially important because the IMI Enterprise had great difficulty in maintaining relationships with payment processors due to the high rate of credit card chargebacks and complaints from consumers.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 60 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

61.    Both Marc D' Souza and Maurice D' Souza have retained millions of dollars in proceeds from the IMI Enterprise in their bank accounts.  These funds are the subject of a lawsuit currently pending in Ontario, Canada, in which Innovative Marketing alleges that Marc D' Souza and MauriceD' Souza have embezzled millions of dollars from the IMI Enterprise.

**ANSWER:**    Defendant is without knowledge of the allegations contained in the first sentence of paragraph 61 and thus denies them.  Defendant admits the allegation contained in the second sentence of paragraph 61.

### The Role of Kristy Ross

62.    Ross is responsible for marketing the Defendants' products, and has placed millions of dollars worth of false and misleading ads for the Defendants' products with Internet advertising networks and other entities.

**ANSWER:**    Exercising her rights under the Fifth Amendment to the Constitution of the

United States, Defendant respectfully declines to answer the allegations contained in paragraph 62 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

63.     Ross has been warned on multiple occasions that the ads she is placing are exploitive and deceitful.  Despite these warnings, Ross has continued to place ads for the Defendants' products.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 63 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

**COUNT ONE**

**Deceptive "Scareware" Marketing**

**(As To All Defendants)**

64.     In numerous instances**,** in the course of marketing, offering for sale, and selling computer software, the Defendants represent or have represented, expressly or by implication, through a variety of means, including Internet advertisements, software-generated reports, and customer service telephone conversations, that they have conducted scans of consumers' computers and detected a variety of security or privacy issues**,** including viruses, spyware, system errors and pornography.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 64 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

65.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 64, the Defendants have not conducted scans of consumers' computers and/or have not detected the purported security or privacy issues on consumers' computers.

**ANSWER:**     Exercising her rights under the Fifth Amendment to the Constitution of the United States, Defendant respectfully declines to answer the allegations contained in paragraph 65 on the ground that her answer might tend to incriminate her.  Defendant further respectfully requests that such declination have the same procedural effect under Fed. R. Civ. P. 8(d), as if she specifically denied the allegation.

66.     Therefore, the Defendants' representations as set forth in Paragraph 64 are false and misleading and constitute deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C.§ 45(a).

**ANSWER:**     Paragraph 66 asserts legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 66.

## COUNT TWO

### Disgorgement of the Assets of the Relief Defendant

67.     Defendants have committed deceptive acts and practices against consumers in violation of Section 5(a) of the FTC Act in connection with the sale of their computer software.

**ANSWER:**     Paragraph 67 asserts legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 66.

68.     Relief Defendant Maurice D' Souza has received ill-gotten funds or otherwise benefited from funds that are the proceeds of the Defendants' unlawful acts.

**ANSWER:**     Defendant is without knowledge of the allegations contained in paragraph 68 and thus denies them.  Moreover, paragraph 68 also contains legal conclusions to which no response is required.

69.     Relief Defendant Maurice D' Souza has no legitimate claim to the ill-gotten funds in his possession, and will be unjustly enriched if he is not required to disgorge the funds or the value of the benefit he received as a result of the Defendants' unlawful acts.

**ANSWER:**     Defendant is without knowledge of the allegations contained in paragraph

69 and thus denies them.  Paragraph 69 also asserts legal conclusions to which no response is

required.

70.     Maurice D' Souza should be required to disgorge the ill-gotten funds or the value of the benefit he received as a consequence of the Defendants' unlawful acts.

**ANSWER:**     Defendant is without knowledge of the allegations contained in paragraph

70 and thus denies them.

71.     By reason of the foregoing, Maurice D' Souza holds the proceeds of the Defendants' unlawful acts in a constructive trust for the benefit of the consumers who were deceived by the Defendants.

**ANSWER:**     Defendant is without knowledge of the allegations contained in paragraph

71 and thus denies them.  Paragraph 71 also asserts legal conclusions to which no response is

required.

## CONSUMER INJURY

72.     The Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), as set forth above, have caused and continue to cause substantial injury to consumers. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers and harm the public interest.

**ANSWER:**     Defendant denies the allegations contained in paragraph 72.  Defendant

further states that she is without knowledge of the allegations in paragraph 72 to the extent they

relate to other named defendants and thus denies the allegations on that basis.

## THIS COURT'S POWER TO GRANT RELIEF

73.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to

grant injunctive and other ancillary relief, including consumer redress, disgorgement, and restitution, to prevent and remedy any violations of any provision of law enforced by the FTC.

**ANSWER:**   Defendant admits paragraph 73.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Federal Trade Commission, requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

1.   Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, and a financial accounting;

2.   Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

3.   Award such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4.   Award such relief against Relief Defendant Maurice D'Souza that the Court finds necessary to protect and return funds and other property that were derived from Defendants' violations of the FTC Act, including an order to disgorge all ill-gotten gains or proceeds that he has received as a result of the acts and practices complained of herein, and an order imposing a constructive trust upon such gains or proceeds; and

5.   Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

**ANSWER:**   Defendant denies the allegations, whether express or implied, contained in Plaintiff's prayer for relief and denies that Plaintiff is entitled to any relief, of any nature, whatsoever.

## DEFENSES

The statement of any defense does not assume the burden of proof for any issue as to which applicable law places the burden upon plaintiff.  Defendant expressly reserves the right to amend and/or supplement her defenses or assert any matters in avoidance of plaintiff's claim which may become appropriate as discovery proceeds in this case.

## **First Defense**

Plaintiff has failed to state a claim upon which relief can be granted.

## **Second Defense**

Any injury allegedly incurred was not caused by Defendant Ross and any injury resulted from superseding or intervening events outside the knowledge or control of Defendant Ross.

Dated: June 23, 2009

Respectfully submitted,

_____/s/_____

| | |
|---|---|
| Dan K. Webb, *pro hac vice* | Michael A. Del Negro (Bar No. 17344) |
| Thomas L. Kirsch II, *pro hac vice* | Winston & Strawn LLP |
| Winston & Strawn LLP | 1700 K Street, N.W. |
| 35 West Wacker Drive | Washington, D.C. 20006 |
| Chicago, Illinois 60601 | (202) 282-5000 |
| (312) 558-5600 | (202) 282-5100 (facsimile) |
| (312) 558-5700 (facsimile) | mdelnegro@winston.com |
| dwebb@winston.com | |
| tkirsch@winston.com | |

*Attorneys for Defendant Kristy Ross*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that in accordance with Fed. R. Civ. P. 5(a) a true and correct copy of the foregoing Answer was served on June 23, 2009 upon counsel of record by means of filing in the U.S. District Court for the District of Maryland Case Management/Electronic Case Filing (CM/ECF) system upon all counsel.

_____/s/_____
Michael A. Del Negro

*One of the Attorneys for Defendant Kristy Ross*

31