## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **Federal Trade Commission** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. RDB 08-CV-3233** |
| **Innovative Marketing, Inc.,** *et al.* | |
| **Defendants,** | |
| **AND** | |
| **Maurice D'Souza** | |
| **Relief Defendant.** | |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT SAM JAIN, KRISTY ROSS, AND MARC D'SOUZA'S REQUEST FOR ATTORNEYS' FEES

### I.      Background of Proceedings

On June 9, 2009, this Court held a hearing to consider, *inter alia*, whether the

Preliminary Injunction issued by this Court on December 12, 2008, should be modified to permit

Defendants Jain, Ross and Marc D'Souza to use frozen assets to pay attorneys' fees in a parallel

criminal investigation.  After hearing argument from the FTC and defense counsel, the Court

requested further briefing on this issue.  This supplemental memorandum provides this Court

with additional support for the FTC's argument that Defendants Jain, Ross and D'Souza should

not be permitted to utilize the proceeds of their unlawful acts to fund their criminal defense.

### II.      Argument

Defendants Jain, Ross and D'Souza each request that this Court allow them to spend an

unlimited amount of the proceeds of their fraud to pay their criminal attorneys.  It is clear from

1

the caselaw that generally Defendants have no right to use ill-gotten gains to pay for attorneys' fees – even in criminal cases. Moreover, the FTC is not required to trace the frozen funds to the proceeds of the fraud – especially when consumer injury far exceeds the amount of assets frozen.

However, due to the parallel criminal investigation and consistent with the ruling in SEC v. Coates, 1994 WL 455558 at *3 (S.D.N.Y. Aug. 23, 1994), this Court has scheduled an adversary post-restraint hearing to determine the propriety of the asset freeze in light of the criminal investigation in Chicago. Even under the Coates analysis, the Court can and should deny Defendants' request to pay criminal attorneys' fees from frozen assets since the FTC has already made a prima facie showing of FTC Act violations and has demonstrated, to the extent possible, that any frozen assets are traceable to the fraud.[1] Moreover, the Defendants are jointly and severally liable for Innovative Marketing, Inc.'s ("IMI") ill-gotten gains. Finally, even if the Court finds that the Defendants are entitled to use money from the asset freeze for criminal attorneys' fees, the Defendants have not made a proper showing of need to justify their requests, and that is reason alone to deny Jain, Ross, and D'Souza's requests for frozen funds.

**A.   The FTC Has Already Established a Prima Facie Showing of FTC Act Violations and That the Frozen Assets Are Traceable to the Fraud, and, in any event, the Defendants are Jointly and Severally Liable for IMI's Ill-Gotten Gains Exceeding $74 Million.**

At the June 9 hearing, Defendants Jain, Ross and Marc D'Souza requested relief from the asset freeze to pay criminal counsel fees resulting from an ongoing investigation by the US Attorney's office for the Northern District of Illinois. The FTC opposed this application and the

---

[1]The FTC currently has no idea as to the value or whereabouts of the corporate entity Innovative Marketing, Jain or Ross' frozen assets because, despite the Court's ruling on June 9, Jain and Ross have both continued to refuse to fill out the court-ordered financial statements as to the corporate entity and themselves. Marc D'Souza's frozen assets total approximately $8 million.

Court expressed concern that, under this scenario, the Defendants' Sixth Amendment right to

counsel might be implicated.  Several courts have already addressed this particular issue, and, in

Coates, the district court determined that in order to extend an asset freeze requested *ex parte*

when faced with both criminal and civil actions, it was necessary to hold an adversary post-

restraint hearing to allay any concerns regarding the defendants' Sixth Amendment protections.

Coates,1994 WL 455558 at * 3.  The district court stated that in order to maintain the asset

freeze the SEC need only establish a prima facie case of law violations and make a showing that

the frozen assets are traceable to the fraud.  The FTC has already met this burden and the

Defendants' request should be denied.  Moreover, because the Defendants are jointly and

severally liable for the whole of IMI's profits, which likely exceed $100 million, their assets

should remain frozen as this amount most likely exceeds the Defendants' frozen assets.

      1.      The FTC has established a prima facie case of FTC Act violations and has made a showing that the frozen assets are traceable to the fraud.

In SEC v. Coates, which presented a similar factual scenario, the district court found that

a court may impose a pre-trial asset freeze in a civil case, notwithstanding the defendant's claim

that the asset freeze precludes him from obtaining counsel in a related criminal case.  Coates,

1994 WL 455558 at * 3.  However, the district court, finding that the circumstances dictated that

the court pay close attention to the Defendants' Sixth Amendment rights, determined that in

order to continue a restraint of assets after entering an *ex parte* restraining order, the Court

should hold an adversary, post-restraint hearing to determine whether: (1) the SEC established a

prima facie case of securities law violations; and (2) the SEC made a showing that the frozen

assets are traceable to the fraud.  Coates, 1994 WL 455558 at *3 (court ordered the SEC to

present such evidence at the scheduled PI hearing since the court held only a brief hearing on the

TRO in which counsel for the defendant was present but had only received the papers hours before); but see, SEC v. Cobalt Multifamily Investors, I LLC, 2007 WL 1040309 at * 3 (S.D. N.Y. April 2, 2007) (defendant *not* entitled to use frozen assets to pay attorneys in a parallel criminal proceeding and *not* entitled to a Coates hearing since there was no continuing *ex parte* restraint – the PI hearing had already occurred in which the defendants appeared).  Once there is a preliminary showing that assets are traceable, the burden shifts to the Defendants to demonstrate that they possess assets untainted by fraud.  Coates, 1994 WL 455558 at * 3; SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993).

a.      The Court found the FTC is likely to succeed on the merits

This Court has already conducted a PI hearing in which Jain, Ross, and D'Souza made the conscious decision, after either being personally served or receiving notice of the hearing, not to appear and defend themselves.  This Court found on December 12, 2008, that the FTC was likely to succeed on the merits of its Section 5 claims against all of the Defendants, that the corporate entities were acting as a common enterprise, and that each of the individual Defendants is liable for the acts and practices of the corporate entities.  Specifically, the Court found that the Defendants engaged in deceptive practices in violation of the FTC Act by misrepresenting to consumers that they have scanned consumers' computers and that those computers contain privacy or security threats.  As a result, the Court issued the current PI that, among other things, continues the freeze on the Defendants' assets.

b.      The FTC has already made a showing that any frozen assets are traceable to the fraud and the Defendants have not their burden

It is undeniable that the Defendants have profited handsomely from the deceptive sale of IMI's "scareware" products, as alleged in the complaint.  The FTC has produced volumes of

4

evidence demonstrating that IMI deceptively distributed software to consumers throughout the U.S. and abroad, and the defendants' affidavits submitted in the Canadian litigation, including a profit and loss statement from 2004-2006 (Vol. III, Ex. 17, Att. M, p. 213), corroborate this evidence. This profit and loss statement, submitted by Jain in his capacity as CEO of IMI, demonstrates that the Defendants, through the end of 2006, made approximately $74 million from sales of products and services. This does not include profits from 2007-2008. Considering the fact that the Defendants made $52 million in 2006 alone, it is almost certain that the consumer injury in this case significantly exceeds $100 million. The Defendants have put forth no evidence to demonstrate that IMI legitimately marketed other products to consumers or that the profit and loss statement contains profits from other legitimate businesses. Moreover, Jain and Ross have failed to complete the court-ordered financial statements and have not put forth any evidence regarding any of their assets much less whether they have assets untainted by their fraudulent conduct. In fact, there is no evidence in the record to suggest this. Moreover, to suggest that the Defendants have not received the proceeds of this fraud is absurd, and belied by the fact that Jain was the driving force behind the IMI lawsuit filed in Canada against Marc D'Souza to recover IMI's ill-gotten proceeds.

Finally, to the extent that the FTC is unable to trace all of the frozen funds directly to the fraud, it would unfairly prejudice the FTC to require a full tracing at this stage in the litigation, especially since the defendants, despite the Court's ruling at the June 9th hearing, still have yet to turn over IMI records to the FTC; the very records that would allow the FTC to accomplish the tracing Defendants' demand. The Defendants should not be allowed to benefit from their own contumacious conduct.

5

2.        The Court should deny the Defendants' requests for frozen funds because the Defendants are jointly and severally liable for consumer redress which likely exceeds their frozen assets.

The Defendants are jointly and severally liable for an amount that likely exceeds their frozen assets, and therefore – regardless of whether the Defendants can demonstrate that they possess assets not tainted by the fraud – this Court should deny the Defendants' requests for frozen funds.  This Court has already found that the FTC is likely to succeed on the merits of this case and that Jain, Ross and Marc D'Souza are individually liable for the acts of the corporation.  As such, the Defendants are jointly and severally liable for the deceptive acts of IMI.  FTC v. Nat'l Urological Group, Inc., 2008-1 Trade Cas. (CCH) P76, 183, *112 (N.D. Ga. 2008) (because all of the individual defendants were liable for the acts of the corporation, joint and several liability is appropriate); FTC v. Spectrum Resources Group, 1997-1 Trade Cas. (CCH) P71,808, *9 (9th Cir. 1997) (because the individual defendants satisfy the three prerequisites for individual liability, the district court did not err in holding the three individual defendants jointly and severally liable); See also FTC v. Bay Area Bus. Council, Inc., 2004 WL 769388, at *12 (N.D. Ill. Apr. 8, 2004) (citing FTC v. Think Achievement Corp., 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), rev'd in part on other grounds, 312 F.3d 259 (7th Cir. 2002) (participants in a common enterprise held jointly and severally liable for violations of the FTC Act).  Moreover, since IMI's profits likely exceed $100 million, it is likely that all of the Defendants' frozen assets, regardless of whether they are traced to the fraud, will be needed to redress consumers.[2] Grossman, 887 F. Supp. 649, 661 (S.D. N.Y. 1995) ("it is irrelevant whether the funds affected

---

[2]According to Marc D'Souza's court-ordered sworn financial statements submitted to the FTC, he has $8 million in assets.  Even though D'Souza left IMI at the end of 2006, he is still jointly and severally liable for $74 million– IMI's profits until the end of 2006.  As such, all of his assets should be disgorged, even if acquired after he left the business in 2006.

by the Asset Freeze are traceable to the illegal activity, [where defendants] are jointly and

severally liable for the profits"); SEC v. Current Financial Svcs., 62 F. Supp. 2d 66, 68 (D.C.

D.C. 1999) (to ensure compensation to the victims, the court found it reasonable to maintain the

freeze order where plaintiff demonstrated that the potential disgorgement far exceeded the

amount frozen.)

Although Jain and Ross have refused to fill out the court-ordered financial statements and

disclose the full extent of their assets, Marc D' Souza has disclosed that he has approximately $8

million in frozen assets.  Moreover, Jain sued Marc D'Souza in the Canadian litigation for IMI

profits totaling $48 million, an amount that was later divided between the Defendants pursuant to

a settlement agreement.[3]  Although these are not exact figures, it is clear that these numbers do

not exceed the established amount of consumer injury and, as a result, the Defendants should not

be allowed to deplete the frozen assets.  Current Financial Svcs, 62 F. Supp. 2d at 68; CFTC v.

Morse, 762 F.2d 60, 63 (8th Cir. 1985) ("[i]t would be inequitable to further deplete these funds

to pay [attoneys' fees] in the [defendant's] attempt to avoid paying his customers").

### B.  Irrespective of the Sixth Amendment Issue, The Defendants Have Not Made a Proper Showing of Need To Justify a Release of Frozen Assets.

Neither Jain, Ross, nor Marc D'Souza have submitted evidence to this Court

demonstrating their need for frozen funds, an omission that is fatal to their request.  As a

preliminary matter, neither Jain nor Ross have demonstrated any need from criminal counsel.

Jain has been a fugitive for more than six months, and appears to have no intention of returning

---

[3] The FTC does not know the exact amount Jain or Marc D'Souza received as a result of the settlement of the Canadian litigation because the Defendants have refused to turn over that information.

to face justice.  While Ross presumably would appear in court if charged with a crime, there is

no proof that she is a target of any criminal investigation.  Indeed, Ross' attorney indicated in his

Motion to Stay (D.E. 48) that he has never been told that Ross is a target of the Chicago criminal

investigation.   Therefore, neither Jain nor Ross has demonstrated a need for frozen assets for

their criminal representation.

Although Marc D'Souza has received a target letter from the US Attorney's Office in

Chicago, he clearly has the means to pay for his criminal representation without the need to

unfreeze assets.  Marc D'Souza submitted the court-ordered sworn financial statements to the

FTC indicating that he has an annual income of $1.2 million from a business not related to the

fraud alleged in this case.  In addition, in Marc's motion to modify the PI, he plainly states that

his motion "does not turn on his need, but rather on the absence of any factual or legal

foundation for the broad asset freeze applicable to Mr. D'Souza."  Marc D'Souza's Reply Mem.,

Doc. 88, p.10).  These "after-acquired" assets are entirely exempt from the asset freeze imposed

by the PI, and therefore Marc is eminently capable of paying attorneys' fees in his criminal

matter without draining the limited amount of frozen assets that are available to redress

consumers.

Putting aside the issue of their need for criminal representation, neither Jain nor Ross has

submitted any evidence establishing that they lack access to non-frozen funds or whether they

have after-acquired assets exempt from the PI.  Moreover, they have not submitted any evidence

as to their current employment and whether their current compensation could foot their criminal

attorneys' legal bills.  It is Jain and Ross's burden to establish that they can only secure the

services of an attorney if frozen assets are released, and they must demonstrate that they cannot

8

pay fees from new or exempt assets.  FSLIC v. Dixon, 835 F.2d 554, 565 (5th Cir. 1987).  Courts

have routinely denied or limited requests to use frozen funds for attorneys' fees where the

defendants failed to make that showing and, in fact, had access to other funds.  See, e.g., CFTC

v. Amer. Metals, 991 F.2d 71, 79 (3d Cir. 1993) (affirming refusal to grant a release of frozen

assets for attorneys' fees where, among other things, defendant had access to non-frozen funds);

SEC v. Infinity Group, 212 F.3d 180, 197 (3d Cir. 2000) (limiting release of funds for legal

expenses because defendants were attempting to raise funds from other sources); SEC v.

Dowdell, 175 F. Supp. 2d 850 (W.D. Va. 2001) (requiring reasonable estimates of necessary

attorneys' fees); Cobalt, 2007 WL 1040309 at * 3 (need competent showing of need, such as

state of available assets); SEC v. Dobbins, 2004 WL 957715 at * 2 (N.D. Tx. April 14, 2004)

(court denied defendants' request for frozen assets to pay attorneys' fees where the defendants

failed to provide required accounting, failed to provide information as to outside resources, and

failed to inform court if a retainer had already been paid to attorneys); SEC v. Forte, 598 F.

Supp. 2d 689, 693 (E.D. Pa. 2009) (court denied release of funds where the defendant failed to

provide overall assets and income, offer evidence of efforts to gain employment; and offer

evidence regarding access to non-frozen funds).

 Moreover, courts are especially reluctant to release funds when, as here, the defendant is

slow to produce financial records.[4]  Amer. Metals, 991 F.2d at 79-80; United States v. Payment

---

 [4]Jain and Ross have asserted their Fifth Amendment privilege against self-incrimination and, although the Court directed them to fill out the Court-ordered financial forms (allowing them to assert the Fifth Amendment where necessary), they have still failed to do so.  Jain and Ross cannot ask this Court to unfreeze  money from the unknown quantity of frozen assets and at the same time assert their Fifth Amendment privilege so as to avoid disclosing to the Court the quantity and location of assets.  United States v. Butler, 211 F.3d 826, 832 (4th Cir. 2000) (upholding district court's determination that defendant cannot assert an inability to comply with

Processing Ctr., LLC, 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006) (court required the defendants to submit financial disclosure forms to demonstrate their need in order to justify any release of frozen funds); Forte, 598 F. Supp. 2d at 693.  As the Seventh Circuit stated in World Travel, "because neither the individual nor the corporate defendant has complied with the order to disclose relevant financial information, it is extremely difficult to discern if less drastic remedies would have been appropriate."  FTC v. World Travel Vacation Brokers, 861 F.2d 1020, 1031 (7th Cir. 1988).

Here, Jain and Ross have failed to carry their heavy burden.  Neither of the Defendants have  filled out the court-ordered financial forms outlining their assets, income and liabilities. Neither of the Defendants have submitted any evidence of any kind that they lack access to non-frozen funds.  Neither of the Defendants have submitted any evidence regarding their current employment, their compensation, or steps taken to gain employment.  Finally, neither of the Defendants have submitted any evidence as to the financial status of their criminal representations with respect to the criminal investigation in the Northern District of Illinois, including whether a retainer has already been paid, the hourly rate of their attorney, or a reasonable expectation of fees going forward with the criminal case.

III.    **Conclusion**

Based on the foregoing, the Court should deny the Defendants' request for relief from the asset freeze to pay attorneys' fees.

---

a court order, while at the same time refusing to answer any further questions on the issue through the invocation of the Fifth Amendment privilege).

Dated: July 17, 2009

Respectfully submitted:

WILLARD K. TOM
General Counsel

/s/ Colleen Robbins
Ethan Arenson, DC # 473296 (earenson@ftc.gov)
Colleen B. Robbins, NY# 2882710 (crobbins@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., NW, Room 288
Washington, D.C. 20580
(202) 326-2204 (Arenson); (202) 326-2548 (Robbins);
(202) 326-3395 FACSIMILE

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2009, I caused a true and correct copy of the foregoing, together will all attachments, to be served via the Court's electronic filing system upon:

Tom Kirsch

Winston & Strawn

35 W. Wacker Drive

Chicago, Illinois

60601-9703

*Counsel for Kristy Ross*


Robert Luskin

Patton Boggs LLP

2550 M Street, NW
Washington, DC 20037

*Counsel for Sam Jain*


Garret Rasmussen

Orrick

Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
*Counsel for Marc D'Souza*


Chris Jenkins

Minnillow & Jenkins

22 West 9th Street

Cincinnati, OH 45202

*Counsel for James Reno and ByteHosting Internet Services LLC*


_____          /s/ Colleen Robbins
                                                  Colleen Robbins

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **Federal Trade Commission**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**Innovative Marketing, Inc.,** *et al.*<br><br>                    **Defendants,**<br><br>**AND**<br><br>**Maurice D'Souza**<br><br>                    **Relief Defendant.** | **CIVIL NO. RDB 08-CV-3233** |

## ORDER DENYING DEFENDANT SAM JAIN, KRISTY ROSS AND MARC D'SOUZA'S MOTION TO RELEASE FROZEN FUNDS FOR ATTORNEYS' FEES

Upon consideration of defendant Sam Jain, Kristy Ross and Marc D'Souza's Motions to

Modify the Preliminary Injunction (specifically their request for a release from the asset freeze

for attorneys' fees) and the opposition and supplemental opposition filed thereby by the Federal

Trade Commission, it is this ___ of _____, 2009,

   **ORDERED** that defendant Sam Jain, Kristy Ross and Marc D'Souza's Motions to Modify

the Preliminary Injunction are DENIED.

                                        _____
                                        Richard D. Bennett
                                        United States District Judge