IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-08-3233 |
| INNOVATIVE MARKETING, INC., *et al.,* | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The Federal Trade Commission ("FTC") brought this case under sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), for injunctive and other equitable relief against a group of corporate entities and individuals for alleged deceptive conduct in connection with the sale of software. Specifically, the FTC alleges that two companies, Defendants Innovative Marketing, Inc. ("Innovative Marketing") and ByteHosting Internet Services, LLC ("Bytehosting") operated as a common enterprise (the "IMI Enterprise" or "Enterprise") to conduct a massive "scareware"[1] scheme that marketed a variety of computer security software via deceptive advertising. Several of the companies' officers and directors, namely, Sam Jain ("Jain"), Daniel Sundin ("Sundin"), Marc D'Souza ("D'Souza"), Kristy Ross ("Ross"), and James Reno ("Reno"), are alleged to have directed or participated in the IMI Enterprise. Finally, the FTC has named Maurice D'Souza, the father of Marc D'Souza, as a defendant in this suit.

---

[1] As noted in the Complaint, "scareware" is a common term that refers to a software-driven, Internet-based scheme that "exploits consumers' legitimate concerns about Internet-based threats like spyware and viruses by issuing false security or privacy warnings to consumers for the sole purpose of selling software to fix the imagined problem." (Compl. at 15.)

The FTC filed the present action on December 2, 2008.  After a hearing was held on December 12, 2009, this Court entered a Preliminary Injunction that served to, *inter alia*, prohibit Defendants from continuing the alleged deceptive business activities, freeze Defendants' assets, and compel Defendants to turn over certain business records to the FTC.  On March 4, 2009, Defendant Marc D'Souza filed a Motion to Dismiss under Rules 12(b)(7) and 19 (Paper No. 70), which was ultimately denied by Letter Order dated June 10, 2009 (Paper No. 110).  However, in the interim period between the filing and denial of his initial motion to dismiss, Marc D'Souza filed the pending Motion to Dismiss under Rule 12(b)(6) (Paper No. 106).

D'Souza now moves this Court to dismiss the Complaint on the basis that it fails to state a claim under sections 5(a) and 13(b) of the FTC Act.  He contends that the FTC has not presented sufficient factual allegations to satisfy the plausibility standard recently enunciated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  All submitted briefs have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, D'Souza's Motion to Dismiss under Rule 12(b)(6) (Paper No. 106) is DENIED.

I.      **Preliminary Procedural Issue**

Before proceeding to the merits of D'Souza's motion to dismiss, it is necessary to address FTC's preliminary argument that the instant motion is procedurally barred for failure to comply with Rules 12(g) and 12(h)(2) of the Federal Rules of Civil Procedure, which govern successive motions to dismiss.

Rule 12(g) sets a general limitation on successive motions to dismiss.  *See* Fed. R. Civ. P. 12(g) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier

motion."). Rule 12(h)(2) then exempts from this general waiver any Rule 12(b)(6) defenses that are raised (A) in an answer; (B) in a motion for judgment on the pleadings; or (C) at trial. *See* Fed. R. Civ. P. 12(h)(2).

A technical reading of Rules 12(g) and 12(h)(2) appears to prevent defendants from filing successive pre-answer motions to dismiss under the circumstances present in the instant case. However, as the FTC acknowledges, many courts have interpreted these rules permissively and have accepted subsequent motions on discretionary grounds. *See, e.g., Tatum v. R.J. Reynolds Tobacco Co.*, No. 02-373, 2007 U.S. Dist. LEXIS 39801, at *16-19 (M.D.N.C. May 31, 2007); *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1059 (D. Md. 1991); *In re Westinghouse Sec. Litig.*, No. 91-354, 1998 U.S. Dist. LEXIS 3033, at *24 (W.D. Pa. Mar. 12, 1998). Such a permissive reading has been justified as comporting with the general spirit of the rules and as promoting the interests of efficiency. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1392 (3d ed. 2004) ("Since the basic purpose of Rule 12(h)(2) probably is to preserve the defenses, rather than to delimit the precise timing of their assertion, this [more permissive] approach seems sound and within the spirit, if not the letter, of the provision."); *Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1095 n.3 (D. Md. 1979) ("A complaint is always vulnerable to a challenge for legal sufficiency[, and] it is far more efficient to treat the arguments prior to more extensive discovery."); *In re Westinghouse Sec. Litig.*, 1998 U.S. Dist. LEXIS 3033, at *23-24 (noting the efficiency benefits of addressing successive motions to dismiss).

Recognition of D'Souza's second motion to dismiss is especially warranted due to the fact that it squarely addresses the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which was issued after D'Souza's first motion to dismiss was filed. D'Souza

now moves to dismiss on the basis that the allegations in the FTC's Complaint are insufficient to support the claims leveled against him.  The *Iqbal* decision, together with the Supreme Court's earlier decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "have refined the standard of review [a court] should apply in determining whether a plaintiff's complaint sufficiently states a claim for relief pursuant to the requirements of Rule 8."  *Fletcher v. Philip Morris USA Inc.*, No. 09-284, 2009 U.S. Dist. LEXIS 63094, at *11 (E.D. Va. July 14, 2009).  In addition, there is no indication that D'Souza's filing was done in order to delay the proceedings or to inconvenience or prejudice the Plaintiff.  *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, No. 00-113, 2001 U.S. Dist. LEXIS 24364, *6-7 (W.D. Va. Jan. 29, 2001) (noting that a second motion to dismiss may be permitted if it "will not visit that sort of inconvenience or prejudice upon the plaintiffs that is sought to be avoided under the federal rules").  Because D'Souza invokes a legitimate issue that was recently addressed by the Supreme Court, this Court exercises its discretion to addresses the instant 12(b)(6) motion.[2]

## II.     Standard of Review

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint, as governed by Rule 8.  Fed. R. Civ. P. 12(b)(6).  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  When reviewing such challenges, courts construe the pleading requirements prescribed by Rule 8 liberally and accept "all well-pleaded allegations in the plaintiff's complaint as true

---

[2] The FTC argues that the pending motion to dismiss should be disregarded because the *Iqbal* decision does not represent a "sea change in the law of pleading." (Pl.'s Opp. at 4.)  However, *Iqbal*'s importance cannot be minimalized.  In *Iqbal*, the United States Supreme Court further articulated and defined its prior holding in *Twombly*, and the two cases represent a new framework for reviewing the sufficiency of complaints under Rule 8.  Because Defendant's 12(b)(6) motion directly addresses the effect and significance of this new framework, it is properly addressed by this Court.

and draw[] all reasonable factual inferences from those facts in the plaintiff's favor." *Id.* at 244. Traditionally, reviewing judges have operated under the oft-stated mantra that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Supreme Court recently modified the standard of review under Rule 12(b)(6) that had prevailed for half a century. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) the Court dispensed with the "no set of facts" language in *Conley*. Instead, the Court held that to withstand a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under the plausibility standard, while a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. In other words, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.*

In *Iqbal*, the Court expanded upon *Twombly* by explicating the analytical approach to be followed in any Rule 12(b)(6) test to the sufficiency of a complaint. First, reviewing courts are instructed to identify and segregate out the legal conclusions in the complaint, which, unlike the factual allegations, are "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Second, a court must determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1951. The Court advised that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Indeed, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Finally, the Court characterized the analysis as "context-specific" and advised reviewing courts to draw upon "judicial experience and common sense" in making their determination.

### III.     Analysis

### A. Plaintiff's Claims under the FTC Act

The FTC has brought the present action under sections 5(a) and 13 of the FTC Act. Section 5(a) of the Act, 15 U.S.C. § 45(a)(1), prohibits engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Section 13, 15 U.S.C. § 53(b), authorizes the FTC to seek injunctive relief for section 5 violations.

To succeed under section 5(a), the FTC must prove (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material. *See FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). Upon the establishment of corporate liability, individual defendants may be held liable if the FTC can show that they "participated directly in the practices or acts or had authority to control them." *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *see also, e.g.*, *FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Amy Travel*, 875 F.2d at 573. In addition, the FTC must show that the individual had some knowledge of the violative conduct. *See Publishing Clearing House*, 104 F.3d at 1170 (noting that corporate individuals are liable if they "had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent

6

conduct, that the misrepresentations were the type which a reasonable and prudent person would rely, and that consumer injury resulted"). In this regard the FTC need not make a showing of "intent per se"—instead the knowledge requirement may be "fulfilled by showing that the individual had 'actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *Amy Travel*, 875 F.2d at 574 (quoting *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1292 (D. Minn. 1985)); *see also FTC v. Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d 285, 311 (D. Mass. 2008) (noting that the FTC must prove "that the individual defendants either knew or should have known about the deceptive practices, but it is not required to prove subjective intent to defraud").

### B. Allegations Concerning Defendants' Conduct

The FTC's Complaint sets forth a host of factual allegations, general and specific, concerning misconduct committed by the corporate defendants, Innovative Marketing, and Bytehosting, and the individual defendants, Reno, Jain, Sundin, Ross, and Marc and Maurice D'Souza. The Complaint states that since at least 2003, the Defendants conspired to sell computer security software by means of deceptive Internet advertising. (Compl. ¶¶ 22, 23.) More specifically, Defendants allegedly issued exploitive advertisements that redirected consumers to sites which falsely claimed that the consumers' computers had been scanned and that certain viruses, pornographic pictures, or compromised files had been discovered. (Compl. ¶¶ 23-26, 29-30.) The consumers were then directed to purchase computer security software in order to purge their computers of the suspect files purportedly detected by the Defendants' fake scans. (*Id.* at 27-28, 31.)

The Complaint also alleges that since 2004 or earlier, Defendants had placed misleading advertisements for their software products with major Internet advertising networks, which serve as brokers that distribute advertisements to their website partners. (*Id.* at 32.) The advertising networks contracted with its partners to display the Defendants' advertisements across the Internet. (*Id.* at 33-34.) After the advertising networks, such as MyGeek, began to receive complaints, they stopped accepting Defendants' advertisements. (*Id.* at 35-37.) At this point, in 2007, Defendants allegedly began creating a number of sham Internet advertising agencies that duped advertising networks and commercial websites into accepting their misleading advertisements. (*Id.* at 38-39.) Toward this end, Defendants falsely represented that they were authorized to place advertisements, and they used sophisticated program coding that concealed the exploitative nature of the ads from the advertising networks in order to gain their approval for distribution. (*Id.* at 39-41.) Once distributed and placed upon popular Internet sites, the exploitative content of the ads was revealed to many of the consumers, who were thereupon redirected to the Defendants' websites that operated the bogus scans. (*Id.* at 42-43.)

The FTC alleges that this scheme resulted in substantial consumer injury, and that more than one million consumers were deceived into purchasing the Defendants' software products. (*Id.* at 20, 72.) The foregoing synopsis reveals that the FTC's Complaint alleges, with sufficient factual detail, the Defendants' massive "scareware" scheme—conduct that contravened section 5(a) of the FTC Act.

**C. Allegations Specifically Concerning Marc D'Souza's Conduct**

In addition to the allegations pertaining to the Defendants generally, the FTC has pled a number of allegations describing D'Souza's role in the Enterprise.

As mentioned above, to secure individual liability under the FTC Act, there must be a showing of participation or control in an enterprise's unlawful activity, which in turn may be indicated by an individual's assumption of duties as a corporate officer, involvement in business affairs, or role in the development of corporate policies.  *See Amy Travel*, 875 F.2d at 573.  Marc D'Souza is identified as a corporate officer of Innovative Marketing, who was recruited by Jain, the company's co-founder and CEO.  (Compl. ¶¶ 11, 51.)  It is alleged that D'Souza personally handled the company's finances and was instrumental in establishing and maintaining "numerous merchant accounts with various payment processors around the world."  (*Id.* at 58, 59.)  His role in this regard, "was especially important because the IMI Enterprise had great difficulty in maintaining relationships with payment processors due to the high rate of credit card chargebacks and complaints from customers."  (*Id.* at 60.)  Moreover, it is alleged that between October 2004 and November 2006, Defendant Ross paid for the placement of more than $3.3 million worth of ads with the MyGeek network, by using, among other things, credit cards belonging to Marc D'Souza and Daniel Sundin.  (*Id.* at 33.)  Such allegations are sufficient to evidence the sort of corporate control and participation that may support individual liability under the FTC Act.

To establish individual liability under section 5(a) the FTC must also establish that an individual defendant had some knowledge of the unlawful conduct.  Because "the degree of participation in business affairs is probative of knowledge," *Amy Travel*, 875 F.2d at 574, the allegations noted above lead to the inference that D'Souza had knowledge of the IMI Enterprise's unlawful scheme.  It is notable that the IMI Enterprise is depicted as a relatively small enterprise—involving two companies and a handful of leading individuals—that was successful in carrying out a massive scheme that deceived over one million consumers.  In sum,

D'Souza is alleged to have been an officer who played an important and functional role within the Enterprise, by handling its finances and its relationships with payment processors, and by even providing his credit card for the placement of ad space. These allegations suggest that D'Souza was deeply involved in a closely-run Enterprise, and permit the reasonable inference that D'Souza either had actual knowledge of the unlawful conduct, or at least exhibited reckless disregard for the truth.

Finally, the FTC has claimed that Marc D'Souza and his father, Defendant Maurice D'Souza, harbored "millions of dollars in proceeds from the IMI Enterprise in their bank accounts" and that the D'Souzas have since been sued by Innovative Marketing for embezzlement. (Compl. ¶¶ 61, 62.) These additional allegations show that Marc D'Souza had a direct incentive to participate in the Enterprise's scheme and that he personally profited from it, perhaps even to the detriment of the Enterprise and his co-conspirators.

**D. The FTC Has Stated a Claim Against Marc D'Souza under the *Twombly* and *Iqbal* Framework**

Having analyzed the Complaint as a whole, and assuming the validity of all of the well-pleaded factual allegations—as opposed to legal conclusions—this Court holds that FTC has pled sufficient factual content to state a claim to relief that is plausible on its face in accordance with *Twombly* and *Iqbal*. In reaching this conclusion, this Court performed a "context-specific" analysis of the allegations pertaining both to the Defendants generally and to D'Souza specifically—an analysis that was further informed by "judicial experience and common sense."[3] *Iqbal*, 129 S. Ct. at 1950.

---

[3] D'Souza contends that in weighing the sufficiency of the Complaint, this Court should disregard the allegations relating to the Defendants collectively. However, D'Souza's argument is misguided. The allegations pertaining to the Defendants as a whole provide the context that allows this Court to understand and weigh the significance of the claims specifically relating to D'Souza. For instance, the allegations describing the mechanics of the Enterprise's scheme reveal the critical importance of the Enterprise's relationship with payment processors. Because Marc

The deceptive operations of the IMI Enterprise, and the complex and sophisticated manner in which Defendants are alleged to have deceived consumers through deceptive online advertisements, is explicated in thorough detail in the Complaint. The Enterprise is depicted as a relatively intimate operation involving the coordinated activities of two companies and five individual officers. Separate sections in the Complaint are devoted to demonstrating the role of each of the officers in terms of their participation in the overall scheme. D'Souza, who was personally recruited by Jain, Innovative Marketing's CEO and co-founder, was chosen to develop and maintain the Enterprise's relationship with payment processors, a critical and yet difficult task, as these relationships were constantly strained by credit card chargebacks and customer complaints. (Compl. ¶ 60.) Finally, D'Souza is alleged to have worked with his father, Maurice D'Souza, to hoard ill-gotten proceeds collected by the Enterprise.

The factual allegations clearly support each of the requisite elements of a cause of action for individual liability under sections 5(a) and 13(b) of the FTC Act, including participation in, control over, and knowledge of, the Enterprise's unlawful conduct. Moreover, specific allegations relating to D'Souza's position as an officer, his critical role as a liaison with payment processors, and the use of his credit card to purchase ad space, provide the "further factual enhancement" suggesting that D'Souza's activity was directly in furtherance of the unlawful conspiracy. *Twombly*, 550 U.S. at 557.

In the face of such thorough pleading, D'Souza advocates for this Court to apply an unduly stringent pleading standard and dismiss the Complaint. Indeed, Defendant seems to argue for a pleading standard akin to the particularity requirement prescribed for claims of fraud under Fed. R. Civ. P. 9(b)—a heightened standard that does not apply section 5(a) claims under

---

D'Souza personally oversaw and nurtured these relationships, this Court is able to infer that he was aware of, and complicit in, the Enterprise's unlawful conduct.

the FTC Act. *See, e.g., FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 314-15 (S.D.N.Y. 2008). *Twombly* and *Iqbal* may have raised the bar for stating a claim under Rule 8, but not to the extent proposed by D'Souza. Rule 8 remains a liberal standard—a complaint need only set forth a "short and plain statement" that gives a defendant fair notice of plaintiff's grounds for entitlement for relief. Fed. R. .Civ. P. 8(a)(2). *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005) (noting that while the allegations must provide fair notice, the "ordinary pleading rules are not meant to impose a great burden upon a plaintiff"). Indeed, in *Iqbal*, the Court emphasized the appropriate approach under the plausibility standard by noting that it was not a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Stated otherwise, a plaintiff need only plead sufficient facts to "nudg[e]" a claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Viewing the totality of the allegations through the lens of judicial experience and common sense, this Court finds that the FTC has clearly "plea[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 50). Through its extensive factual pleadings, the FTC has positioned its claims against Marc D'Souza safely within the realm of plausibility.

## **CONCLUSION**

For the foregoing reasons, this Court DENIES Defendant Marc D'Souza's Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) (Paper No. 106). A separate Order follows.

Dated: September 16, 2009                                /s/_____

                                              Richard D. Bennett
                                              United States District Judge