IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | * | |
| PLAINTIFF, | * | |
| V. | * | CIVIL ACTION NO.: RDB-08-3233 |
| KRISTY ROSS, *INDIVIDUALLY AND AS AN OFFICER OF INNOVATIVE MARKETING, INC.*, | * | |
| | * | |
| DEFENDANT. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Federal Trade Commission ("FTC") brought this case under sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), against a group of corporate entities and individuals for alleged deceptive conduct in connection with the sale of software. Specifically, the FTC alleged that two companies, Defendants Innovative Marketing, Inc. ("Innovative Marketing") and ByteHosting Internet Services, LLC ("ByteHosting") operated as a common enterprise (the "IMI Enterprise" or "Enterprise") to conduct a massive "scareware"[1] scheme that marketed a variety of computer security software via deceptive advertising. The FTC alleged that several of the companies' officers and directors, namely, Sam Jain ("Jain"), Daniel Sundin ("Sundin"), Marc D'Souza ("D'Souza"), Kristy Ross ("Ross"), and James Reno ("Reno"), directed or participated in the IMI Enterprise.

---

[1] As noted in the FTC's Complaint, "scareware" is a common term that refers to a software-driven, Internet-based scheme that "exploits consumers' legitimate concerns about Internet-based threats like spyware and viruses by issuing false security or privacy warnings to consumers for the sole purpose of selling software to fix the imagined problem." Compl. ¶ 15, ECF No. 1.

The FTC filed the present action on December 2, 2008.  After a hearing was held on December 12, 2009, this Court entered a Preliminary Injunction that served to, *inter alia*, prohibit Defendants from continuing the alleged deceptive business activities, freeze Defendants' assets, and compel Defendants to turn over certain business records to the FTC.

Of the original eight defendants, four have settled with the FTC, and three are in default and have had judgments entered against them for failure to appear and participate in this litigation.  Defendant Kristy Ross is the only remaining defendant, and the sole remaining motion, the FTC's Motion for Summary Judgment, pertains to her alone.  On May 9, 2012, this Court held a hearing on that motion pursuant to Local Rule 105.6 (D. Md. 2011).[2]  For the reasons that follow, the Federal Trade Commission's Motion for Summary Judgment (ECF No. 186) is DENIED, and a bench trial has been scheduled for September 10, 2012.

## BACKGROUND

The background facts of this case were fully set forth in this Court's previous Memorandum Opinion entered on September 16, 2009.  *See Federal Trade Commission v. Innovative Marketing, Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009) (ECF Nos. 138 & 139).  That

---

[2]  On May 27, 2010, the parties jointly moved for a sixty day stay of proceedings in order to pursue a settlement.  This Court granted that request.  *See* Order, ECF No. 170.  On July 27, 2010, the parties moved for an additional sixty day stay of proceedings to pursue settlement.  This Court granted that request as well, and the entire case was stayed.  *See* Order, ECF No. 172.  On September 22, 2010, the parties resumed litigation, and this Court entered an order lifting the stay and revising the scheduling order.  *See* Order, ECF No. 175.  As a result of a docketing error, however, the stay was not technically lifted and the case was not marked as an active case on this Court's docket.  This matter was recently brought to the Court's attention, and the stay was promptly lifted.  This Court regrets the error, and resulting delay in proceedings.

background is repeated here, in part, so as to provide context for the pending motion for summary judgment.

The FTC's Complaint sets forth a host of factual allegations, general and specific, concerning misconduct committed by the corporate defendants, Innovative Marketing, and Bytehosting, and the individual defendants, Reno, Jain, Sundin, Ross, and Marc and Maurice D'Souza. The Complaint alleges that since at least 2003, the Defendants conspired to sell computer security software by means of deceptive Internet advertising. More specifically, Defendants allegedly issued exploitive advertisements that redirected consumers to sites that falsely claimed that the consumers' computers had been scanned and that certain viruses, pornographic pictures, or compromised files had been discovered. The consumers were then directed to purchase computer security software in order to purge their computers of the suspect files purportedly detected by the Defendants' fake scans.

The Complaint also alleges that since 2004 or earlier, Defendants had placed misleading advertisements for their software products with major Internet advertising networks, which serve as brokers that distribute advertisements to their website partners. The advertising networks contracted with their partners to display the Defendants' advertisements across the Internet. After the advertising networks, such as MyGeek, began to receive complaints, they stopped accepting Defendants' advertisements. At this point, in 2007, Defendants allegedly began creating a number of sham Internet advertising agencies that duped advertising networks and commercial websites into accepting their misleading advertisements. Toward this end, Defendants falsely represented that they were authorized to place advertisements, and they used sophisticated program coding that concealed the

exploitative nature of the ads from the advertising networks to gain their approval for distribution.   Once distributed and placed upon popular Internet sites, the exploitative content of the ads was revealed to many of the consumers, who were thereupon redirected to the Defendants' websites that operated the bogus scans.   The FTC alleges that this scheme resulted in substantial consumer injury, and that more than one million consumers were deceived into purchasing the Defendants' software products.

Defendant Kristy Ross does not directly contradict these assertions made by the FTC and does not argue that Innovative Marketing or the other named defendants did not violate the FTC Act through unfair and deceptive advertising and marketing.   Instead, her opposition to the FTC's motion centers on her role in the company—specifically, she argues that she was merely an employee and not a "control person" at the company, that she did not have the requisite knowledge of the misconduct at issue, and as a result, cannot be held individually liable under the Act.   In this regard, the specific allegations concerning Ross' control and knowledge of the company's conduct will be discussed in the Analysis section *infra*.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

The FTC has brought the present action under sections 5(a) and 13 of the FTC Act. Section 5(a) of the Act, 15 U.S.C. § 45(a)(1), prohibits engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Section 13, 15 U.S.C. § 53(b), authorizes the FTC to seek injunctive relief for section 5 violations.

To succeed under section 5(a), the FTC must prove (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material. *See FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

Upon the establishment of corporate liability, individual defendants may be held liable if the FTC can show that they "participated directly in the practices or acts or had authority to control them." *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *see also, e.g.*, *FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Amy Travel*, 875 F.2d at 573. In addition, the FTC must show that the individual had some knowledge of the violative conduct. *See Publ'g Clearing House*, 104 F.3d at 1170 (noting that corporate individuals are liable if they "had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type which a reasonable and prudent person would rely, and that consumer injury resulted"). In this regard the FTC need not make a showing of "intent per se"—instead the knowledge requirement may be "fulfilled by showing that the individual had 'actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *Amy Travel*, 875 F.2d at 574 (quoting *FTC v. Kitco of Nev., Inc.*, 612 F. Supp. 1282, 1292 (D. Minn. 1985)); *see also FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 311 (D.

Mass. 2008) (noting that the FTC must prove "that the individual defendants either knew or should have known about the deceptive practices, but it is not required to prove subjective intent to defraud").

The crux of the FTC's case against the sole remaining Defendant Kristy Ross is based on its contention that she exercised significant control over, and had knowledge of, the company's illegal activities. As Ross does not contest much of the FTC's evidence regarding the other defendants' alleged violations of the FTC Act, this Court will assume *arguendo* that FTC Act violations did indeed occur and will concentrate on the parties' arguments pertaining to Ross' involvement with Innovative Marketing.

As a preliminary matter, it must be noted that the FTC has clearly been able to compile a substantial and impressive amount of evidence in this case. Because this case is set for a bench trial, this Court will be the finder of fact, and will, in all likelihood, review much the same evidence and argument at trial. Given this, it would appear that the expense of further litigation could be avoided through summary judgment. However, this Court's role in evaluating evidence in the context of summary judgment is markedly different than in the context of a bench trial. Judge Nickerson of this Court recently described the interplay between the summary judgment and bench trial phases of a case as follows:

> In ruling on motions for summary judgment, the Court's role is limited. "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury." *Med. Inst. Of Minn. v. Nat'l Ass'n of Trade & Technical Schs.*, 817 F.2d 1310, 1315 (8th Cir. 1987). Furthermore, "even if the facts are undisputed, summary judgment may not be granted where there is disagreement over inferences that

can be reasonably be drawn from those facts." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 433 (3rd Cir. 1996).

In contrast, after a bench trial, the Court is required to weigh the evidence and make credibility determinations. *In re French*, 499 F.3d 345, 359 (4th Cir. 2007). Rather than deciding whether a genuine issue of material fact exists, the Court makes findings of fact by evaluating the persuasiveness of conflicting evidence and "decid[ing] which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc).

*Waterkeeper Alliance, Inc. v. Alan and Kristin Hudson Farm, et al.*, No. WMN-10-0487, Ltr. Order at 2, ECF No. 143 (D. Md. March 1, 2012); *see also* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2712 (3d ed. 1998) ("A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion but is only empowered to determine whether there are issues to be tried.").

Notwithstanding the fact that the FTC's evidence is substantial, at this stage in the litigation, this Court is unable to conclusively determine whether the FTC is entitled to summary judgment against Kristy Ross because to do so would require this Court to make credibility findings, inferences, and findings of fact that are more properly made in the context of a bench trial.

The FTC argues that Ross was a "control person" at Innovative Marketing, and points to evidence showing that Ross worked at the company since its inception and during her tenure, assumed the roles of Chief Operating Officer and Chief Technology Officer. *See*

Ross Aff., Ex. 2 to FTC's Mot. for Summ. J.[3]  Moreover, the FTC has propounded evidence

showing that beginning in 2006, Ross held the position of Vice President of Business

Development and was later identified as a Vice President of Innovative Marketing as late as

June 21, 2008.  *See* FTC Mem. at 51, ECF No. 186-1 and supporting exhibits.  Ross routinely

approved and requested payment for expenses incurred by Innovative Marketing, and on

several occasions, used her personal credit card to pay for certain advertising and operating

expenses.  *Id.*  In Innovative Marketing's chat logs Ross is observed making executive-type

decisions, demanding that employees fix problems and follow company procedures, and

delegating Innovative Marketing business projects.  In one telling instance, Ross threatens to

fine an entire department if it does not complete a project on schedule.  *Id.* at 52.

Regarding Ross' knowledge of the deceptive nature of Innovative Marketing's

advertisements, the FTC has argued that Ross opened fifty-four individual accounts with

MyGeek, an internet advertising company, routinely communicated with MyGeek regarding

complaints that company received pertaining to Innovative Marketing ads, and routinely

approved and edited the content of ads placed on the MyGeek network.  *Id.* at 53-56.  In the

company's chat logs, Ross is observed directing employees to make ads more aggressive

because "aggression zero doesnt [sic] give sales."  *Id.* at 56.

---

[3]  As the FTC continually points out, Kristy Ross has chosen to invoke her Fifth Amendment right against self-incrimination at nearly every turn in this litigation, and has effectively not participated in discovery.  Her affidavit, cited by the FTC, was not made in connection with this case, but rather in connection with a Canadian lawsuit filed by Defendants Daniel Sundin and Sam Jain against co-Defendant Marc D'Souza regarding a dispute over Innovative Marketing's profits (hereinafter referred to as the "Canadian Litigation").  Ross sought to strike the affidavits and pleadings from the Canadian Litigation on the ground that they contained inadmissible hearsay.  *See* Ross' Motion to Strike, ECF No. 204.  This Court heard argument on that motion and denied it on the record during the May 9, 2012 motions hearing.  *See* May 9, 2012 Order, ECF No. 226.

As noted, the evidence propounded by the FTC is substantial, and drawing the required inferences from the evidence in favor of the FTC would result in a grant of summary judgment in its favor.  However, as persuasively argued by Ross, inferences drawn from the very same evidence in her favor plausibly lead to the opposite conclusion—that Ross was merely an employee of Innovative Marketing and not a control person—and, at the very least, create genuine issues of material fact that cannot be decided on summary judgment.

For example, Ross notes that at the time Innovative Marketing was formed by Sam Jain and Daniel Sundin in 2002, Ross was twenty-two years old and was dating Sam Jain.  *See* Ross Mem. at 2, ECF No. 199 and supporting exhibits.  She argues that the FTC's evidence pertaining to her corporate titles with Innovative Marketing is essentially meaningless insofar as Innovative Marketing did not operate under traditional corporate formalities, and the titles given to employees were used only to explain employees' responsibilities to overseas employees.  *Id.*  In this regard, Ross points to a declaration made by one of the FTC's own investigators that states: "Innovative Marketing, Inc. did not adhere to corporate formalities with respect to business structure, the titles and roles of Officers or business records."  *Id.* Regarding the Canadian Litigation documents cited extensively by the FTC, Ross argues that those same affidavits and pleadings conclusively show that she was *not* a control person or director at Innovative Marketing.  For example, Daniel Sundin's affidavit in the Canadian Litigation indicates that Sundin and Sam Jain alone were the principals of the Innovative Marketing venture, and make no mention of Ross being a partner or director of the company.  *Id.* at 14.  Finally, when Marc D'Souza became a third partner at Innovative

Marketing in 2006, Ross was not involved in any of the decisions regarding the additional partner or his level of compensation.  *Id.* at 15.

Similarly, Ross notes that while certain of the company's chat logs indicate that she had some degree of control over certain aspects of Innovative Marketing's affairs, the vast majority of those same logs show that instead of approving ads, Ross merely makes English language suggestions in order to assist Innovative Marketing's overseas employees.  *Id.* at 18. Moreover, some of the chat logs, when viewed in the light most favorable to Ross, might possibly indicate that she actually believed Innovative Marketing was a legitimate company that provided "sound products" to its customer.  *Id.* at 25-26.  In addition, in a 2006 e-mail exchange between Sam Jain and James Reno, a co-defendant whom the FTC described in its Complaint as a "senior executive," Reno writes to Jain:

> Hey What is kristy's role in the company?  How much access is she allowed to have?  And how much stuff is she allowed to request to be completed?  ie: removing accounts, ect.  She has been increasingly making changes in access control lately, and I need to know if she's allowed.  (ie: suddens acct, uni's ect.) Regards, James.

Jain responded:

> Yeah that should be fine.  Sudden has been talking to her on an off when he's not sick.  He told her to remove uni's vpn since uni's already quit, as well as sudden claimed he got his laptop stolen so he had to get his passwords changed. . . .

Ross Mem. at 19-20 and supporting exhibits.

Put simply, the conflicting inferences that can be drawn from the extensive record in this case do not permit this Court to grant summary judgment to the FTC.  Perhaps sensing this conclusion, the FTC seeks to have this Court draw an adverse inference against Ross for continually invoking her Fifth Amendment right against self-incrimination in response to

deposition questions posed, and for failing to provide any meaningful discovery.  However, at this stage of the litigation, this Court concludes that a finding of an adverse inference is not warranted.  In ruling on a motion for summary judgment this Court must draw all reasonable inferences in favor of the nonmoving party and an adverse inference finding conflicts with that standard.  *See, e.g.*, *Stichting Ter Behartiging Van de Bel. V. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("Treating [the defendants'] silence as a separate piece of evidence supporting the Bank's motion for summary judgment and drawing inferences against [them] on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable inferences must be drawn in favor of the nonmovant."); *In re Inflight Newspapers, Inc.*, 423 B.R. 6, 17 (Bankr. E.D.N.Y. 2010) ("the summary judgment standard, requiring a Court to draw all reasonable inferences in favor of the nonmoving party, precludes the drawing of an adverse inference, 'despite potential for the ultimate trier of fact to draw an adverse inference.'").

The United States Court of Appeals for the Fourth Circuit has cautioned, however, that a defendant's assertion of her Fifth Amendment privilege can impose "severe burdens" and may "significantly reduce a party's chances of prevailing on the merits of his claim."  *In re Grand Jury Subpoena*, 836 F.2d 1468, 1473 (4th Cir. 1988).  While this Court will not draw an adverse inference in the context of summary judgment, as a fact finder in a bench trial, this Court *is* "entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination."  *Eplus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002).

In sum, after reviewing the record, as well as the pleadings, exhibits, and argument by counsel, this Court, taking the evidence in the light most favorable to the defendant, must deny the FTC's motion for summary judgment.

CONCLUSION

For the reasons stated above, the FTC's Motion for Summary Judgment (ECF No. 186) is DENIED, and this case will proceed to a bench trial on Monday, September 10, 2012.

Dated:  June 11, 2012

/s/_____
Richard D. Bennett
United States District Judge